IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-CV-238-MU

| | | |
|---|---|---|
| WILLIAM L. PENDER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| BANK OF AMERICA CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

THIS MATTER is before the Court on separate Motions to Dismiss Plaintiffs' Third

Amended Complaint submitted by Defendants Bank of America ("BoA") and

PricewaterhouseCoopers ("PwC"). Plaintiffs allege that the structure and administration of the

Bank of America Pension Plan ("the BAC Plan" or "the Plan") violates the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. 1001 *et seq.* BoA's motion is

GRANTED as to Count Two, and the Court reserves judgment on Counts One, Three, and Four

until after the hearing on April 28, 2010. PwC was only named in Count Four, and its motion is

GRANTED.

## I.    BACKGROUND

This action arises from the organization and administration of the BAC Plan, and

transactions between that plan and the BoA 401(k) Plan ("the 401(k) Plan").

### A.  Retirement Plans in General

This case deals with some of the most complicated aspects of employee pension plans,

which warrants a brief overview of how these plans function. The plans at issue in this case are

(1) the BAC Plan, which is a type of defined benefit plan called a cash balance plan; and (2) the

1

BoA 401(k) Plan, which is a defined contribution plan. ERISA covers both defined benefit plans and defined contribution plans. Defined benefit plans promise that upon retirement a specific monthly benefit will be provided based on a plan formula. These plans generally do not allow for an increase in participant benefits beyond the amount guaranteed under the formula. Defined contribution plans, on the other hand, do not guarantee a specific amount upon retirement. Instead employees are given individual accounts to which both the employer and employee can contribute. Under this type of plan, an employee's retirement benefit is the account balance upon retirement. A 401(k) plan is a defined contribution plan.

Under the 401(k) system, an employee has an individual account to which the employer and the participant can contribute a defined amount. In most plans, each participant can then invest his individual account in whichever investment options are provided under the plan. The participant typically bears all the investment risk: if the participant invests poorly, the full account balance can be lost. Although a 401(k) carries this risk, each individual account holder is afforded an important protection: the money in a participant's 401(k) account is his own money, and, unlike a defined benefit "account," cannot be squandered through the actions of the plan administrators.

A cash balance plan is a species of defined benefit plan, which is often referred to as a hybrid plan because it has aspects of defined-benefit and defined contribution plans. Like a defined-contribution plan, a participant has an individual account to which the employer contributes funds. The participant earns interest on that account, or in some cases, the participant can invest the funds in a limited number of financial instruments. But there is a key difference: the participant's account is virtual. In reality, the employer pools the contributed money and invests that pool as it sees fit, while crediting the accounts based on the participants

2

hypothetical investment choices or some pre-set interest formula.  As noted above, because a participant's account is virtual, there is no separate account protection.  On the other hand, the employer shelters any investments risk; thus, no matter the poverty of the participant's hypothetical investment choices, the participant's account balance can never drop below the base contributions made by the employer.  A cash balance plan must comply with ERISA's standards for defined benefit plans.  Upon retirement, the benefit is usually provided as a lump-sum distribution or an annuity.

### B.  The BoA Plans

The BAC Plan is a successor in interest to the NationsBank Pension Plan and the BankAmerica Pension Cash Balance Plan, which merged in 1998.  The BAC Plan is a cash balance plan that was originally formulated in 1998 by NationsBank, under the guidance of Defendant PwC.  The BAC Plan, and its predecessors, were or are "employee pension benefit[s]," "employee benefit plan[s]," and "defined benefit plan[s]," under ERISA §§ 3(2)(A), 3(3), and 3(35) (29 U.S.C. §§ 1002(2)(A), 1002(3), 1002(35)).  For the sake of convenience, the separate plans will generally be described as "the Plan" or the "BAC Plan."

Under the BAC Plan, a participant is given a virtual account, which is credited monthly with compensation and investment credits.  The compensation credits are based on a percentage of the employee's salary, and the investment credits are based on a limited number of investment options, which are identical to the options available under the Bank's 401(k) plan.  Like all cash balance plans, the account balance can never be less than the sum of the opening balance and all compensation credits.  The accounts are not however protected from inflation, which means the actual value of the accounts can decrease.

In addition to the BAC Plan, both NationsBank and Bank of America have or had 401(k) Plans. For the sake of convenience, these 401(k) plans with be referred to as "the 401(k) Plan(s)" or "the 401(k)." Participants in these 401(k)s were given the option of transferring their accounts to the NationsBank Cash Balance Plan and the Bank of America Pension Plan; and thousands of participants elected to do so. On July 1, 1998, $1.4 billion was transferred from the NationsBank 401(k) Plan to the NationsBank Cash Balance Plan; and on August 4, 2000, $1.3 billion was transferred from the Bank of America 401(k) Plan to the Bank of America Pension Plan. Both the Plaintiffs and the IRS claim that these transfers violated ERISA.

## III.     THE COMPLAINT

The Third Amended Complaint contains seventeen pages of extensive factual allegations and then asserts four counts as the basis for relief.

### A.  Count Unlawful Lump Sum Benefit Calculation

Count I challenges the Plan's definition of "normal retirement date,"[1] and the Plan's subsequent avoidance of the "whipsaw effect" when calculating a participant's lump-sum benefit. Under ERISA, a vested plan participant "has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." ERISA § 203(a)(2) (29 U.S.C. § 1053(a)(2), 26 U.S.C. § 411(a)(2)). If a defined benefit plan participant seeks his accrued benefit before reaching normal retirement age, the participant can receive a lump-sum payment that is calculated by "projecting the participant's hypothetical account balance to

---

[1] For reasons that remain unclear, the Plan uses the phrase "normal retirement date" to denote what might be described as "normal retirement age." (Def. Mem., Doc. 222, Ex. 2, p. 12.)

normal retirement age using the plan's interest or investment crediting rate, then converting the projected account balance to a life annuity using reasonable actuarial factors expressed under the terms of the plan," and finally, discounting the value of the annuity back to the time when the lump-sum payment is received. (3d Am. Comp., Doc. 145, p. 20 (citing ERISA § 204(c)(3) (29 U.S.C. § 1054(c)(3), 26 U.S.C. § 411(c)(3)); ERISA § 205(g) (29 U.S.C. § 1055(g), 26 § U.S.C. 417(e))). This calculation can lead to a "whipsaw effect" whereby the lump sum is greater than the current account balance because the projected growth rate under the plan outpaces the discount rate used to express the accrued benefit in terms of today's dollars.

Plaintiffs argue that the Plan unlawfully avoided the whipsaw effect by attempting to set a normal retirement age that coincided with a participant being vested under the plan—generally occurring before age 65—rather than using age 65, which should be the Plan's normal retirement age under ERISA.[2]

### B. Count Two: Age Discrimination

Count Two alleges age discrimination. The Court will not go into greater detail as both parties agree this count should be dismissed.

### C. Count Three: Violation of Anti-Backloading Rules

Count Three alleges that the Plan violates ERISA's anti-backloading rules. ERISA requires that "benefits accrue roughly pro rata over the course of an employee's career, rather than being heavily back weighted." (3d Am. Comp., Doc. 145, p. 26 (citing ERISA § 204(b)(1)(A)-(C) (29 U.S.C. § 1054(b)(1)(A)-(C), 26 U.S.C. § 411(b)(1)(A)-(C))). The anti-

---

[2] The Plan defines "normal retirement date" as "the first day of the calendar month following the earlier of (i) the date the Participant attains age sixty-five (65) or (ii) the date the Participant completes sixty (60) months of Vesting Service." (3d Am. Comp., Doc. 145, Ex. 2, p. 12.)

backloading rules, however, no longer apply once a participant reaches normal retirement age. Plaintiffs argue that the Plan often sets an unlawfully premature normal retirement age for its participants, and then the Plan provides outsized benefits after the unlawful normal retirement age.

### D. Count Four: Elimination of Protected Benefit

Count Four alleges that the transfer of assets from the 401(k) Plans to the BAC Plan, and its precursors, unlawfully eliminated the separate account benefit afforded by the 401(k) Plans. ERISA provides that a participant's accrued benefit "may not be decreased by an amendment of the plan except as otherwise specifically provided in ERISA or regulations." (3d Am. Comp., Doc. 145, p. 27 (citing ERISA § 204(g)(1) (29 U.S.C. § 1054(g)(1), 26 U.S.C. § 411(d)(6)(A))). Plaintiffs allege that there are no statues or regulations that allow the separate account benefit to be eliminated. (3d Am. Comp., Doc. 145, p. 27 (citing § 204(g)(1) (29 U.S.C. § 1054(g)(1), 26 U.S.C. § 411(d)(6)(1)); 26 C.F.R. § 1.411(d)-4)). Plaintiffs further allege the 401(k) Plans' fiduciaries breached their fiduciary duty by allowing the transfers to take place. Finally, Plaintiffs claim that PwC and BoA (in its non-fiduciary capacity) knowingly participated in the above violations, subjecting PwC and BoA to equitable remedies under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)).

### V. THE MOTIONS TO DISMISS

BoA and PwC submit individual Motions to Dismiss and memoranda of law in support of those motions.[3]

---

[3] Four years after submitting its motion to dismiss, BoA submitted a supplemental memorandum of law in further support of its motion to dismiss. The memorandum sets out new bases for challenging Counts One and Three, which will be addressed by the Court in a future order.

Defendant BoA moves to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6). Defendant argues (1) that "the complaint fails to state a claim of age discrimination [Count Two]," (2) that Plaintiffs' fiduciary duty claims [Count Four] should be dismissed," and (3) "Plaintiffs have not stated a claim for benefits or an injunction '*nunc pro tunc*' and have failed to exhaust their administrative remedies within the time required by the Plan."  (Def. Mem., Doc. 151, p. 7, 14, 20.)  Defendant BoA also seeks dismissal or an order to strike certain of Plaintiffs requests for relief, arguing that they are unavailable in this action.  As noted above, the Court reserves judgment on BoA's motion to dismiss.

Defendant PwC moves to dismiss Count Four, arguing that Plaintiffs have failed to state a knowing participation claim.

## VI.    MOTION TO DISMISS STANDARD

When a court rules on a motion to dismiss, all well-pleaded allegations are accepted as true, and reasonable inferences are drawn in favor of the plaintiff.  *Edwards v. Coty of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999).   A plaintiff must allege facts in his complaint that "raise a right to relief above the speculative level."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), the Court held that "to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (citing *Twombly*, 550 U.S. at 570.)  A claim is plausible on its face "when the plaintiff pleads sufficient factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When the allegations in a complaint do not "raise a claim of entitlement to relief," the court will dismiss the complaint.  *Twombly*, 550 U.S. at 554-56.

## VII.   DISCUSSION

### A.  Count Two: Age Discrimination

Plaintiffs concede that this Count is unviable.  (Pl. Notice Supp. Auth., Doc. 218, p. 1.) The Court, therefore, dismisses this Count.

### B.  Exhaustion of Administrative Remedies

Defendant has withdrawn its exhaustion argument as to Counts One and Three.  (Def. Mem., Doc. 222, p. 18, n. 11.)  It is unclear whether Defendant also challenged Count Four under an administrative exhaustion theory.  Regardless, the account transfers charged in Count Four are not denial of benefit claims, and are not subject to the administrative exhaustion requirement.  *See Smith v. Sydnor*, 184 F.3d 356, 362 (4th Cir. 1999) (holding that exhaustion is required only when "the resolution of the claim rests upon an interpretation and application of *an ERISA-regulated plan* rather than upon an interpretation and application of *ERISA*").

### C.  Count Four: Elimination of Protected Benefit

The Court reserves judgment as to BoA and Count Four is dismissed as to PwC. Plaintiffs allege that PwC knowingly participated in BoA's alleged anti-cutback violations and fiduciary breaches.  Under § 502(a)(3) of ERISA (29 U.S.C. § 1132(a)(3)), a plan participant can seek "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  *Id.*  The Supreme Court held that § 502(a)(3) provides a cause of action against non-fiduciaries when they knowingly participate in a breach of fiduciary responsibilities that violates ERISA Subchapter I. *Harris Trust & Savings Bank v. Salomon Smith Barney Inc.*, 530 U.S. 238, 246-49 (2000).

In this case, Plaintiffs allege three underlying violations by BoA's stemming from the transfer of assets from the 401(k) Plans to the BAC Plan: (1) the Bank unlawfully cutback benefits under ERISA § 204(g)(1) (29 U.S.C. § 1054(g)(1), 26 U.S.C. § 411(d)(6)(A)); 26 C.F.R. § 1.411(d)-4, Q&A-3(a)(2); (2) the Plans' fiduciaries' breached their duties by failing to ignore the Plan amendments that effected the transfer, ERISA §§ 404-405 (29 U.S.C. §§ 1104-1105); and (3) the Plans' fiduciaries and the Bank unlawfully participated in "prohibited transactions," ERISA § 406 (29 U.S.C. § 1106).

PwC's alleged participation in the above violations took three forms: (1) PwC designed the scheme to transfer the assets; (2) PwC served as outside auditor to the Bank, and the BAC and 401(K) Plans; and (3) PwC served as contract administrator for the BAC and 401(K) Plans.

### i. PwC as Plan Designer

PwC is not subject to equitable measures based on its acts as the designer of the scheme to transfer assets. Plaintiffs allege that § 502(a)(3) provides a cause of action against PwC for its knowing participation in the transfer of assets between the Plans, which violated ERISA.

As a Plan designer, PwC did exactly that: it participated in the design of the Plan. Plaintiffs concede that plan design is not the same as plan implementation, (Pl. Resp., Doc. 156, p. 10, n. 6 ("Design, adoption and amendment are one thing; implementation another.") Plaintiffs have not cited any provision within ERISA stating that it is unlawful to design a plan that would violate ERISA. Under the broadest reading of § 502(a)(3)—which would allow for claims against non-fiduciaries even if the underlying ERISA violation was a non-fiduciary act—PwC cannot be enjoined for designing an unlawful plan, because ERISA does not explicitly prohibit that conduct.

### ii. PwC as Auditor and Contract Administrator

PwC is not subject to equitable measures based on its acts as outside auditor to Bank and the Plans, and contract administrator for the Plans. Plaintiffs again predicate their claim upon § 502(a)(3)—knowing participation. Plaintiffs' main contention is as follows: "Without PwC handling the 1998 or 2000 audits of the . . . 401(k) Plans . . . some *other* auditor might have put a stop to it. Obviously, Bank *needed* PwC to perform these functions, otherwise the scheme would never have gotten as far as it did." (Pl. Resp., Doc. 156, p. 12.) Plaintiffs do not cite case law or a statute in support of this contention.

Plaintiffs do cite two cases in which a non-fiduciary knowingly participated in a fiduciary's breach, although both of the cases were used to support propositions that are not relevant to the current analysis. In *Daniels v. Bursey,* 313 F. Supp. 2d 790 (N.D. Ill. 2004), the plaintiffs stated a knowing participation claim when non-fiduciary insurance companies actively participated in the fiduciary's mismanagement of plan investments, including failing to "allocate the Plan's insurance funds from variable accounts to safer accounts." *Id.* at 809. In *In re Enron Corp. Sec., Deriv. & ERISA Litigation*, 284 F. Supp. 2d 511 (S.D. Tex. 2003), the plaintiffs claim was based upon the plan auditor's knowing participation in Enron's fiduciary breaches by allegedly helping the company inflate its stock price and "actively conceal . . . the truth about Enron's financial condition and the imprudence of investing in the company's stock." *Id.* at 662. PwC's behavior here does not rise to the level of the knowing participants in the aforementioned cases.

Plaintiffs allege that as auditor, PwC was "examining financial statements of the plans and making statutorily required pronouncements that all appears to be in good order." (*Id.* at 11.) Plaintiffs, however, point to no law under which an auditor is liable for violations of

10

ERISA when the financial statements produced by the auditor were correct and produced in accordance with generally accepted accounting principles. There is no allegation that PwC failed to correctly account for the assets as they were actually allocated. Further, PwC's actions as an auditor did not directly implement the plan.

As contract administrator, PwC was allegedly "responsible for maintaining the plans' books and records, including '*claims payment*.'" (*Id.* at 11.) Yet there is no support for the but-for argument Plaintiffs make. Plaintiffs' emphasis on PwC's responsibility over claims payment seems to imply that PwC somehow participated in wrongfully paying out claims. In any event, the Third Amended Complaint does not allege that ERISA was violated due to participants receiving less when their claims were paid. The allegation is that the participants were deprived of their separate account protections—a protected benefit under ERISA; this deprivation has nothing to do with "claims payments."

### iii. PwC Compartmentalization

Plaintiffs make a series of arguments against compartmentalizing PwC's knowledge and assets between the portions of the firm that designed the Plan and the portions of the firm that audited and administrated. These arguments are irrelevant given the Courts holding that none of PwC's actions—be they designing, auditing, or administrating—give rise to a claim under § 502(a)(3).

### iv. Remedies Against PwC

Finally, Plaintiffs' arguments about remedies are irrelevant because they failed to state a claim under § 502(a)(3).

## V. CONCLUSION

BoA's Motion to Dismiss has been considered in part. Count Two against BoA is hereby DISMISSED, and BoA's exhaustion of remedies argument is REJECTED. PwC's Motion to Dismiss is hereby GRANTED.

SO ORDERED.

Signed: April 7, 2010

Graham C. Mullen
United States District Judge