IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-CV-238-MU

| | |
|---|---|
| WILLIAM L. PENDER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| BANK OF AMERICA CORP., et al., ) | |
| ) | |
| Defendants. ) | |

THIS MATTER is before the Court on Plaintiffs' Motion to Certify Class and for Appointment of Class Counsel. For reasons giving below, the Motion is **GRANTED.**

I. BACKGROUND

This action arises from the organization and administration of the Bank of America Pension Plan ("the BAC Plan" or "the Plan"), and transactions between the BAC Plan and the Bank of America 401(k) Plan ("the 401(k) Plan"). Plaintiffs' fundamental allegation is that Bank of America (BoA) has wrongfully deprived Plaintiffs of benefits under the Plans.

a. Retirement Plans in General

This case deals with some of the most complicated aspects of employee pension plans, which warrants a brief overview of how these plans function. The plans at issue in this case are (1) the BAC Plan, which is a type of defined benefit plan called a cash balance plan; and (2) the 401(k) Plan, which is a defined contribution plan. ERISA covers both defined benefit plans and defined contribution plans. Defined benefit plans promise that upon retirement a specific monthly benefit will be provided based on a plan formula. These plans generally do not allow

1

for an increase in participant benefits beyond the amount guaranteed under the formula. Defined contribution plans, on the other hand, do not guarantee a specific amount upon retirement. Instead employees are given individual accounts to which both the employer and employee can contribute. Under this type of plan, an employee's retirement benefit is the account balance upon retirement. A 401(k) plan is a defined contribution plan.

Under the 401(k) system, an employee has an individual account to which the employer and the participant can contribute a defined amount. In most plans, each participant can then invest his individual account in whichever investment options are provided under the plan. The participant typically bears all the investment risk: if the participant invests poorly, the full account balance can be lost. Although a 401(k) carries this risk, each individual account holder is afforded an important protection: the money in a participant's 401(k) account is his own money, and, unlike a defined benefit "account," cannot be squandered through the actions of the plan administrators.

A cash balance plan is a species of defined benefit plan, and is often referred to as a hybrid plan because it has aspects of defined-benefit and defined contribution plans. Like a defined-contribution plan, a participant has an individual account to which the employer contributes funds. The participant earns interest on that account, or in some cases, the participant can invest the funds in a limited number of financial instruments. But there is a key difference: the participant's account is virtual. In reality, the employer pools the contributed money and invests that pool as it sees fit, while crediting the accounts based on the participants hypothetical investment choices or some pre-set interest formula. As noted above, because a participant's account is virtual, there is no separate account protection. On the other hand, the

2

employer shelters any investments risk; thus, no matter the poverty of the participant's hypothetical investment choices, the participant's account balance can never drop below the base contributions made by the employer. A cash balance plan must comply with ERISA's standards for defined benefit plans. Upon retirement, the benefit is usually provided as a lump-sum distribution or an annuity.

### b.  The BoA Retirement Plans

The BAC Plan is a successor in interest to the NationsBank Pension Plan and the BankAmerica Pension Cash Balance Plan, which merged in 1998. The BAC Plan is a cash balance plan that was originally formulated in 1998 by NationsBank, under the guidance of Defendant PwC. The BAC Plan, and its predecessors, were or are "employee pension benefit[s]," "employee benefit plan[s]," and "defined benefit plan[s]," under ERISA §§ 3(2)(A), 3(3), and 3(35) (29 U.S.C. §§ 1002(2)(A), 1002(3), 1002(35)). For the sake of convenience, the separate plans will generally be described as "the Plan" or the "BAC Plan."

Under the BAC Plan, a participant is given a virtual account, which is credited monthly with compensation and investment credits. The compensation credits are based on a percentage of the employee's salary, and the investment credits are based on a limited number of investment options, which are identical to the options available under the Bank's 401(k) plan. Like all cash balance plans, the account balance can never be less than the sum of the opening balance and all compensation credits. The accounts are not however protected from inflation, which means the actual value of the accounts can decrease.

In addition to the BAC Plan, both NationsBank and Bank of America have or had 401(k) Plans. For convenience, these 401(k) plans with be referred to as "the 401(k) Plan(s)" or "the

401(k)." Participants in these 401(k)s were given the option of transferring their accounts to the NationsBank Cash Balance Plan and the Bank of America Pension Plan; thousands of participants elected to do so. On July 1, 1998, $1.4 billion was transferred from the NationsBank 401(k) Plan to the NationsBank Cash Balance Plan; and on August 4, 2000, $1.3 billion was transferred from the Bank of America 401(k) Plan to the Bank of America Pension Plan. Both the Plaintiffs and the IRS claim that these transfers violated ERISA.

### c. Named Plaintiffs

The named plaintiffs in this action are Mr. William L. Pender and Mr. David McCorkle. Mr. Pender is a current BoA employee who has worked for the company for 35 years and is an active participant in both the BAC Plan and the 401(k) Plan. Mr. Pender was 69 years old when this Motion was filed. Mr. McCorkle is a former Nations Bank employee who was an active participant in the BAC and 401(k) Plans. He received a lump-sum distribution when he left BoA. Mr. McCorkle was 55 when this motion was filed.

### d. Plaintiffs' Causes of Action

The Third Amended Complaint contains seventeen pages of extensive factual allegations and then asserts four counts as the basis for relief.

#### 1. *Count Unlawful Lump Sum Benefit Calculation*

Count I challenges the Plan's definition of "normal retirement date,"[1] and the Plan's subsequent avoidance of the "whipsaw effect" when calculating a participant's lump-sum benefit. Under ERISA, a vested plan participant "has a nonforfeitable right to 100 percent of the employee's accrued benefit derived from employer contributions." ERISA § 203(a)(2) (29

---

[1] For reasons that remain unclear, the Plan uses the phrase "normal retirement date" to denote what might be described as "normal retirement age." (Def. Mem., Doc. 222, Ex. 2, p. 12.)

4

U.S.C. § 1053(a)(2), 26 U.S.C. § 411(a)(2)). If a defined benefit plan participant seeks his accrued benefit before reaching normal retirement age, the participant can receive a lump-sum payment that is calculated by "projecting the participant's hypothetical account balance to normal retirement age using the plan's interest or investment crediting rate, then converting the projected account balance to a life annuity using reasonable actuarial factors expressed under the terms of the plan," and finally, discounting the value of the annuity back to the time when the lump-sum payment is received. (3d Am. Comp., Doc. 145, p. 20 (citing ERISA § 204(c)(3) (29 U.S.C. § 1054(c)(3), 26 U.S.C. § 411(c)(3)); ERISA § 205(g) (29 U.S.C. § 1055(g), 26 § U.S.C. 417(e))). This calculation can lead to a "whipsaw effect" whereby the lump sum is greater than the current account balance because the projected growth rate under the plan outpaces the discount rate used to express the accrued benefit in terms of today's dollars.

Plaintiffs argue that the Plan unlawfully avoided the whipsaw effect by attempting to set a normal retirement age that coincided with a participant being vested under the plan—generally occurring before age 65—rather than using age 65, which should be the Plan's normal retirement age under ERISA.[2]

2. *Count Two: Age Discrimination*

Count Two alleges age discrimination. The Court will not go into as this count has been dismissed.

---

[2] The Plan defines "normal retirement date" as "the first day of
the calendar month following the earlier of (i) the date the
Participant attains age sixty-five (65) or (ii) the date the
Participant completes sixty (60) months of Vesting Service." (3d
Am. Comp., Doc. 145, Ex. 2, p. 12.)

### 3. *Count Three: Violation of Anti-Backloading Rules*

Count Three alleges that the Plan violates ERISA's anti-backloading rules. ERISA requires that "benefits accrue roughly pro rata over the course of an employee's career, rather than being heavily back weighted." (3d Am. Comp., Doc. 145, p. 26 (citing ERISA § 204(b)(1)(A)-(C) (29 U.S.C. § 1054(b)(1)(A)-(C), 26 U.S.C. § 411(b)(1)(A)-(C)))). The anti-backloading rules, however, no longer apply once a participant reaches normal retirement age. Plaintiffs argue that the Plan results in an unlawfully premature normal retirement age for its participants, and then the Plan provides outsized benefits after the unlawful normal retirement age.

### 4. *Count Four: Elimination of Protected Benefit*

Count Four alleges that the transfer of assets from the 401(k) Plans to the BAC Plan, and its precursors, unlawfully eliminated the separate account benefit afforded by the 401(k) Plans. ERISA provides that a participant's accrued benefit "may not be decreased by an amendment of the plan except as otherwise specifically provided in ERISA or regulations." (3d Am. Comp., Doc. 145, p. 27 (citing ERISA § 204(g)(1) (29 U.S.C. § 1054(g)(1), 26 U.S.C. § 411(d)(6)(A))). Plaintiffs allege that there are no statues or regulations that allow the separate account benefit to be eliminated. (3d Am. Comp., Doc. 145, p. 27 (citing § 204(g)(1) (29 U.S.C. § 1054(g)(1), 26 U.S.C. § 411(d)(6)(1)); 26 C.F.R. § 1.411(d)-4)). Plaintiffs further allege the 401(k) Plans' fiduciaries breached their fiduciary duty by allowing the transfers to take place. Finally, Plaintiffs claim that PwC and BoA (in its non-fiduciary capacity) knowingly participated in the above violations, subjecting PwC and BoA to equitable remedies under ERISA § 502(a)(3) (29 U.S.C. § 1132(a)(3)). All persons who accrued benefits under The NationsBank Cash Balance Plan cash balance formula, all persons who accrued and/or are currently accruing benefits under

The Bank of America Pension Plan, all persons who otherwise had or have a cash balance Pension Account under either or both of such Plans, and the beneficiaries and estates of any such persons.

### e. Proposed Classes

Plaintiffs move this Court to certify two classes and appoint as class counsel Mr. Eli Gottesdiener and Mr. Thomas Garlitz.

Plaintiffs refer to the first putative class as the Cash Balance Formula Class, which they define as follows:

> All persons who accrued benefits under The NationsBank Cash Balance Plan cash balance formula, all persons who accrued and/or are currently accruing benefits under The Bank of America Pension Plan, all persons who otherwise had or have a cash balance Pension Account under either or both of such Plans, and the beneficiaries and estates of any such persons.

(Pl. Mem. Doc. 171 at 5.) The Plaintiffs' second putative class is the Cutback Class. It is defined follows:

> All persons who had one or more individual accounts under the Bank of America 401(k) Plan (or one of its predecessors) from which assets were transferred to The NationsBank Cash Balance Plan or The Bank of America Pension Plan in one or more of the coordinated ("one-time") transfers that occurred on or about June 30, 1998, June 30, 1999, August 4, 2000, March 2, 2001, or any other date on which similar coordinated "one-time" transfers occurred, where the assets, once transferred, were not placed in individual or separate accounts within the meaning of section 414(k) of the Tax Code but were commingled with other Pension Plan assets; and the beneficiaries and estates of any such persons.

*Id.*

## II. DISCUSSION

### a. Legal Standard for Certifying Class

Rule 23 of the Federal Rules of Civil Procedure governs certification of a class action. "A district court has broad discretion in deciding whether to certify a class." *Lienhart v. Dryvit*

*Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001). "[F]ederal courts should give Rule 23 a liberal rather than a restrictive construction." *Gunnells v. HealthPlan Servs., Inc.,* 348 F.3d 417, 424 (4th Cir. 2003) (internal quotations and citations omitted).

When ruling on a motion to certify class, facts alleged in the complaint are accepted as true, and the court will not asses the merits of the complaint and defenses. *In re Se. Hotel Props. Ltd P'ship Investor Litig.*, 151 F.R.D. 597, 601 (W.D.N.C 1993). A plaintiff bears the burden of proving that Rule 23's requirements have been met. *Id.* A plaintiff must satisfy the four requirements of Rule 23(a) and show that the case can be maintained under one of Rule 23(b)'s three prongs. *In re A.H. Robins Co., Inc.,* 880 F.2d 709, 727 (4th Cir. 1989), *abrogated on other grounds*, *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 614 (1997). For each class's legal claims, only "*one* of the named class representatives [must] possess the requisite individual or associational standing." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1283 (11th Cir. 2000).

    b.   **Rule 23(a) of the Federal Rules of Civil Procedure**

Plaintiffs satisfy Rule 23(a) the Federal Rules of Civil Procedure. Rule 23(a) imposes four requirements: (1) **"the class is so numerous that joinder of all members is impracticable"**; (2) common questions of fact and law predominate; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class"; and (4) "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

1.  *Rule 23(a)(1): Numerosity*

Plaintiffs meet the numeroisty requirement. Plaintiffs allege that the each class is made up of tens of thousands, if not hundreds of thousands, of former and current BoA employees. Defendants do not quibble with this assertion.

2.  *Rule 23(a)(2): Commonality*

There are questions of law and fact that are common to Plaintiffs' proposed Cash Balance Formula Class and Cutback Class. The commonality test "does not require that all questions of law and fact be common to every member of the class"; rather, "a single common question is sufficient to satisfy the rule." *Haywood v. Barnes*, 109 F.R.D. 568, 577 (E.D.N.C. 1986); *see also Cent. Wesleyan Coll.e v. W.R. Grace & Co.,* 143 F.R.D. 628, 636 (D.S.C.1992), *aff'd* 6 F.3d 177 (4th Cir. 1993) (not requiring that all or even most issues be common).

   A.  Common Questions for the Cash Balance Formula Class

A common question of law predominates when a defendant allegedly miscalculates a plan participant's lump-sum benefit, and (1) the plan's term require the miscalculation or (2) the plan administrators consistently ignore the plan's terms. *George v. Duke Energy Ret. Cash Balance Plan*, 259 F.R.D. 225, 236 (D.S.C. 2009) (holding that a common issue existed when a plan eschewed whipsaw calculations); *e.g.*, *Berger v. Xerox Corp. Ret. Income Guarantee Plan,* 338 F.3d 755, 763-64 (7th Cir. 2003). Commonality can still exist even when a plan would have to apply different interest rates to recalculate each individual's lump-sum distribution. *George*, 259 F.R.D. at 236; *see also Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101, 1106 (5th Cir. 1993) (certifying class despite the "necessity for . . . somewhat complex individual calculation" in order to determine class members' pensions); . Finally, "Rule 23 contains no suggestion that the

necessity for individual damage determinations destroys commonality, typicality, or predominance, or otherwise forecloses class certification." *Gunnells,* 348 F.3d at 427-28.

Here, several common issues of law pervade through the proposed class. First, and at the most general level, the following issue is common to all proposed class members: "Are participants' benefits correctly calculated or are participants forfeiting a portion of their accrued benefits by being paid only an amount equal to the nominal balance in their hypothetical cash balance accounts?" (Pl. Mem. Doc. 171 at 13.)

Second, and more specifically, it is alleged that when Defendants calculate a lump-sum benefit, they fail to account for a participant's right to leave his benefit in the Plan through at least age 70.5. This allegedly results in the forfeiture of a participant's accrued benefit. Whether the proposed class member is among those who have already received a lump-sum, or has yet to, this question is common to all.

Third, this Court must determine whether 5 years of vesting service is a valid NRA under ERISA, or in the alternative, whether the NRA must be 65. This issue is common to any proposed class member under age 65.

Finally, it is alleged that the Plan's NRA has contravened ERISA's anti-backloading protections; this issue is also common to any proposed class member.

 B.   Common Issues for the Cutback Class

The Cutback Class presents at least two common questions for all class members. First, "[w]as ERISA's and the Tax Code's anti-cutback rule violated when Defendants transferred participants' individual account assets from the 401(k) Plan to the Pension Plan and commingled those assets with the general assets of the Pension Plan without segregating them into individual or separate accounts?" (Pl. Mem. 171 at 13.) Second, "[d]id one or more fiduciaries engage in

10

prohibited transactions, or breaches of fiduciary or co-fiduciary duty by participating in the implementation of the allegedly illegal cutback amendments?" (*Id.*)

   3.   *23(a)(3): Typicality*

The typicality element focuses on whether a named plaintiff's claims are typical of the classes' claims; this insures "that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the class members." *Trull v. Dayco Prods., LLC*, 214 F.R.D. 394, 402 (W.D.N.C. 2003) (quoting *Sprague v. Gen. Motors Corp.,* 133 F.3d 388, 399 (6th Cir.1998)).  In an ERISA action, typicality is met when the class representative and class members "have suffered the same harm, to wit, an underpayment of their pension benefits, and would assert the same violations under ERISA."  *Kohl v. Ass'n of Trial Lawyers of Am.*, 183 F.R.D. 475, 484 (D. Md. 1998).

      A.   Typicality for the Cash Balance Formula Class

Mr. McCorkle are Mr. Pender's claims are typical of the proposed class members.  Mr. McCorkle and the proposed class members would have ostensibly suffered the same harm: their ERISA benefits have been, or potentially will be, underpaid because the Plan's NRA is allegedly invalid and the Plan allegedly failed to account for a participant's right to leave his money in the Plan until age 70.5 and beyond.  Mr. Pender's claims are typical because if he decides to take a lump-sum benefit, he alleges that his accrued benefit should include his right to leave his money in the Plan until age 70.5 and beyond. Finally, both men claim that the Plan's NRA contravened ERISA's anti-backloading provisions; this issue is common to the proposed class.

Defendants argue that the named Plaintiffs' claims, particularly Mr. Pender's, are not typical of the putative class.  Defendants attempt to argue the merits of Mr. Pender's cash

balance claims; this, however, is not the time to subject Mr. Pender's claims to the rigors of *Bell Atl. Corp. v. Twombly*, 548 U.S. 903 (2006).

        B.    Typicality for the Cutback Class

Both Plaintiffs challenge the validity of the asset transfer from the 401(k) Plan to the BAC Plan; this is the exact claim nature of the claim that all class members would have.

        4.    *23(a)(4): Protect Class Interests*

Named representatives adequately and fairly protect the interests of the class when "(1) the named plaintiff[s] [have] interests common with, and not antagonistic to, the Class' interests; and (2) the plaintiff[s'] attorney is qualified, experienced and generally able to conduct the litigation." *In re Se Hotel Props.,* 151 F.R.D. at 607 (citations omitted).

Here, the named Plaintiffs and the putative classes share the same interests: (1) ensuring that the Plan correctly calculates there lump benefits; (2) insuring that the Plan complies with ERISA's anti-backloading provisions; and (3) insuring that the Plan be held accountable if the 401(k) transfers violated ERISA. Defendants have not stated how the named Plaintiffs' interests are antagonistic to the classes. Defendants do assert that Plaintiffs do not have sufficient control over the litigation and have not kept themselves adequately informed; however, in a complex lawsuit in which "the defendant's liability can be established only after a great deal of investigation and discovery by counsel against a background of legal knowledge, the representative need not have extensive knowledge of the facts of the case in order to be an adequate representative." *Gunnells*, 348 F.3d at 429-30.

As for Plaintiffs' counsel, he is more than adequate. Mr. Gottesdiener specializes in ERISA class actions, and has been class counsel in ERISA litigation against SBC, Amtrak, and Enron—among others.

### c. Rule 23(b) of the Federal Rules of Civil Procedure

After satisfying Rule 23(a)'s requirements, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3) of the Federal Rules of Civil Procedure. *Amchem Prods., Inc,* 521 U.S. at 614 (1997). If a proposed action can be maintained under either (b)(1) or (b)(2), and also under (b)(3), then the action should be maintained under (b)(1) or (b)(2), instead of (b)(3), so that the judgment will have res judicata effect as to all the class (since no member has the right to opt out in a (b)(1) or (b)(2) suit). *In re A.H. Robins Co.*, 880 F.2d 709, 728 (4th Cir. 1989) (citing 3B *Moore's Federal Practice*, ¶ 23.31[3], pp. 236-237 (2d ed. 1987)), *abrogated on other grounds*, *Amchem Prods.,* 521 U.S. at 620 (1997). Class actions can be maintained under (b)(1) or (b)(2) even when relief for damages is sought. *A.H. Robins Co.*, 880 F.2d at 730 n.28.

1. *Rule 23(b)(1)(A) is Satisfied*

This action meets the requirements of Rule 23(b)(1)(A). Rule 23(b)(1)(A) applies to cases in which "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). According to the Supreme Court, Rule 23(b)(1)(A) applies "'in cases *where the party is obliged by law to treat the members of the class alike* (a utility acting toward customers; a government imposing a tax), or where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against down river owners).'" *Amchem*, 521 U.S. at 614 (emphasis added) (citation omitted).

ERISA cases in which plaintiffs challenge the computation of benefits are often certified under Rule 23(b)(1)(A). *E.g., Wagener v. SBC Pension Benefit Plan-Nonbargained Program*,

13

No. 03-769, slip op. at 3 (D.D.C. September 21, 2005); *In re Amsted Indus., Inc. "ERISA" Litig.*, No. 01-C- 2963, 2002 U.S. Dist. LEXIS 24144, at * 8 (N.D. Ill. Dec. 16, 2002); *Cooper v. IBM Personal Pension Plan*, Civ. No. 99-829-GPM, slip op. at 10 (S.D. Ill. Sept. 17, 2001). In *Schutte v. Maleski*, 1993 U.S. Dist. LEXIS 8332 (E.D. Pa. June 18, 1993), plaintiffs challenged the legality under ERISA of one pension plan amendment and asserted the continued vitality of two others, "differing outcomes [of such a claim] would make it impossible for defendants to implement any one result because of the inherent conflict from disparate adjudications. *Id.* at *26-27. This scenario epitomizes Rule 23(b)(1)(A)'s phrase 'incompatible standards of conduct.'" *Id.* at *26.

Here, Plaintiffs challenge the validity of the Cash Balance Plan itself, the general application of the Cash Balance Plan, and the transfer from the 401(k) Plan to the Cash Balance Plan. In order to grant relief to Plaintiffs, this Court would likely have to make decisions about the fundamental nature of the Plans. There is a risk that putative class members would seek relief in other courts, leading to conflicting interpretations of the Plan and conflicting remedies. This could lead to "incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A).

    2. *Rule 23(b)(2) is Satisfied*

Plaintiffs can also maintain their class action under Rule 23(b)(2). Rule 23(b)(2) permits class actions where "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2). The Plan calculates the benefits of all Cash Balance Formula Class members in the same way, and the members of the Cutback Class all had their assets transferred from the 401(k) Plan to the Cash

Balance Plan. Defendants have therefore "acted or refused to act on grounds generally applicable to the class" and final injunctive or declaratory relief will be appropriate "with respect to the class as a whole." *Id.*

Rule 23(b)(2) can still be satisfied even where a declaratory judgment is "merely a prelude to a request for [monetary relief]." *Berger*, 338 F.2d at 763 (7th Cir. 2003). In *Berger*, the plaintiffs challenged Xerox's systematic failure to correctly perform whipsaw calculations and sought a declaration to that effect; the declaration would have then compelled Xerox to compensate the plaintiffs. Xerox argued that plaintiffs were not seeking declaratory or injunctive relief, "but really just damages equal to the difference between the lump sums to which ERISA entitled the members of the class and the smaller lump sums that they actually received." *Id.* The Seventh Circuit held that "a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief." *Id.* The court continued: "the hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings." *Id.* at 763-64.

Here, as in *Berger*, Plaintiffs ask for a declaration that the Plan systematically deprives them of their rights and benefits under ERISA by (1) using an invalid NRA to calculate a participant's lump-sum benefit; (2) failing to account for a participant's right to maintain his cash balance account up to and beyond age 70.5; (3) backloading participant's benefits; and (4) transferring funds from the 401(k) Plan to the Cash Balance Plan, thereby forfeiting Plaintiffs' separate account benefit. Like *Berger*, declaratory relief would likely be a mere prelude to

15

Case 3:05-cv-00238-GCM   Document 239   Filed 08/25/10   Page 15 of 17

monetary relief, but that does not prevent Plaintiffs from maintaining their action under Rule 23(b)(2).

Defendants argue that declaratory relief would be meaningless vis-à-vis Mr. McCorkle and other class members who are no longer employed by BoA. To the contrary, if the NRA is declared invalid, Mr. McCorkle will have a right to have his lump-sum benefit recalculated, regardless of employment status. Further, Mr. McCorkle, like other class members, has an interest—*inter alia*—in the Bank's profits being fully disgorged.

Defendants also argue that some former employees in either class have "'knowingly and voluntarily' released the Bank of America Defendants from all actual or potential claims, including any claims arising under ERISA." (Def. Mem. Dock. 173 at 28.) First, the releases are only in favor of BoA, and not the Cash Balance Plan of the 401(k) Plan. The Fourth Circuit has held that where a release agreement references the plaintiff's employer but did not reference the employee benefit plan, the release agreement does not release the plan because the employer and the plan are separate legal entities. *Barron v. UNUM Life Ins. Co. of Am.*, 260 F.3d 310, 315-16 (4th Cir. 2001)

d. **Appointing Class Counsel**

As requested, class counsel will be the Eli Gottesdiener and Mr. Garlitz. When appointing class counsel under Rule 23(g) of the Federal Rules of Civil Procedure, a court must consider the following factors: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) counsel's experience; (3) counsel's knowledge of the law; and (4) counsel's resources. The Court has already discussed Mr. Gottesdiener's experience in the area of ERISA class actions; he is certainly suitable. There is no indication that Mr. Garlitz is not suitable.

## III. CONCLUSION

The Court hereby certifies Plaintiffs' class action and allows Plaintiffs to proceed with the two classes as requested: (1) the Cash Balance Formula Class, and (2) the Cutback Class.

The Cash Balance Formula class is defined as follows:

> All persons who accrued benefits under The NationsBank Cash Balance Plan cash balance formula, all persons who accrued and/or are currently accruing benefits under The Bank of America Pension Plan, all persons who otherwise had or have a cash balance Pension Account under either or both of such Plans, and the beneficiaries and estates of any such persons.

(Pl. Mem. Doc. 171 at 5.) The Cutback Class is defined follows:

> All persons who had one or more individual accounts under the Bank of America 401(k) Plan (or one of its predecessors) from which assets were transferred to The NationsBank Cash Balance Plan or The Bank of America Pension Plan in one or more of the coordinated ("one-time") transfers that occurred on or about June 30, 1998, June 30, 1999, August 4, 2000, March 2, 2001, or any other date on which similar coordinated "one-time" transfers occurred, where the assets, once transferred, were not placed in individual or separate accounts within the meaning of section 414(k) of the Tax Code but were commingled with other Pension Plan assets; and the beneficiaries and estates of any such persons.

*Id.* Mr. Gottesdiener and Mr. Garlitz are hereby appointed as class counsel.

**SO ORDERED.**

Signed: August 25, 2010

Graham C. Mullen
United States District Judge