IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

Civil Action No. 3:05-CV-00238-MU

| | |
|---|---|
| WILLIAM L. PENDER and<br>DAVID L. McCORKLE<br><br>On behalf of themselves and on<br>behalf of all others similarly situated<br><br>                    Plaintiffs,<br><br>  v.<br><br>BANK OF AMERICA CORP., *et. al.*<br><br>                    Defendants. | **PLAINTIFFS' MOTION FOR<br>ENTRY OF FINAL<br>JUDGMENT AS TO COUNTS<br>ONE AND THREE** |

Pursuant to Fed. R. Civ. P. 54(b), Plaintiffs respectfully move the Court to direct entry of final judgment in Defendants' favor on all claims under Complaint Counts One and Three (the "Normal Retirement Date" or "NRD" Counts) on the basis that the Court's Orders dismissing these claims are dispositive and that "there is no just reason for delay" of entry of final judgment on these adjudicated claims within the meaning of Rule 54(b).

## BACKGROUND

The adjudicated claims in Counts One and Three, the NRD Counts, allege that the Bank Pension Plan's 5-years-of-service Normal Retirement Date is unlawful under ERISA, causing the Plan to violate ERISA's benefit accrual and vesting standards. These claims are brought on behalf of the Cash Balance Formula Class which is defined to include:

> All persons who accrued benefits under The NationsBank Cash Balance Plan cash balance formula, all persons who accrued and/or are currently accruing benefits under The Bank of America Pension Plan, all persons who otherwise had or have a cash balance Pension Account under either or both of such Plans, and the beneficiaries and estates of any such persons.

Fourth Amended Complaint ("Complaint" or "FAC") (Doc. 259) at ¶¶ 68, 96, and 111. *See also* Class Cert. Order (Doc. 239) at 17. The Court's dismissal of Counts One, Two and Three resolve all claims brought on behalf of the Cash Balance Formula Class.

The unadjudicated claims in Count Four, the 401(k) Transfer Count, allege that a series of specific transactions between the Bank's 401(k) Plan and the Pension Plan were implemented in an unlawful manner, constituting breaches of fiduciary duty and resulting in an unlawful cutback of the "separate account" feature inherent in participants' 401(k) accounts. These claims are brought on behalf of the 401(k) Plan and the Cutback Class which is defined to include:

> All persons who had one or more accounts under the Bank of America 401(k) Plan (or one of its predecessors) from which assets were withdrawn and transferred to The NationsBank Cash Balance Plan or The Bank of America Pension Plan in one or more of the coordinated ("one-time") transfers that occurred on or about June 30, 1998, June 30, 1999, August 4, 2000, March 2, 2001, or any other date on which similar coordinated "one-time" transfers occurred, where the assets, once transferred, were not placed in individual or separate accounts within the meaning of section 414(k) of the Tax Code but were commingled with other Pension Plan assets; and the beneficiaries and estates of any such persons.

FAC at ¶¶ 103 and 111. *See also* Class Cert. Order at 17.

With one important exception discussed below, the only thing in common between the dismissed NRD Counts and the remaining 401(k) Transfer Count is that the Bank's Pension Plan is a defendant under each of the counts and there is some overlap in the distinct Classes certified under each count. The two sets of claims otherwise are completely independent of each of other, with the outcome of Count Four having no bearing whatsoever on the NRD Counts. Because many members of the Cash Balance Formula Class are not members of the Cutback Class and have no stake in the outcome of Count Four, *see* Doc. 171 at 8-9, the Court's dismissal of Counts One, Two and Three ends the case at the district court level for tens of thousands of current and former Bank of America employees. *Id.*

## SUMMARY OF ARGUMENT

Rule 54(b) provides a vehicle by which a district court can certify for immediate appeal a judgment that disposes of fewer than all of the claims in a multiple-claims action or resolves the controversy as to fewer than all of the parties when there is no just cause to delay the appeal of the adjudicated claim and immediate review will promote judicial economy and efficiency, for example by facilitating settlement or avoiding the risk of a duplicative trial on the unadjudicated claims if an appeal on the adjudicated claims is delayed. *See Curtiss-Wright Corp. v. General Electric Co.*, 446 U.S. 1 (1980) (seminal Rule 54(b) case concluding that appeals court should have deferred to district court's well-grounded determination that certification was appropriate).

Here, there is no reason not to certify the NRD Counts for an immediate appeal of this Court's NRD-legality ruling and every reason to do so. As shown below, review by the Fourth Circuit now of the Court's dismissal of Plaintiffs' NRD Counts will advance the resolution of the unadjudicated claims in Count Four, the 401(k) Transfer Count, by making possible a settlement of those 401(k) Transfer claims where no settlement is otherwise likely to occur because of uncertainty regarding the ultimate outcome of the NRD Counts. Moreover, an expensive, duplicative trial or further proceedings on the 401(k) Transfer Count may also be avoided if the Fourth Circuit, which will review the Court's NRD-legality ruling *de novo*, can issue a definitive ruling on the matter promptly before the unadjudicated claims are decided.

As further shown below, an immediate appeal will accomplish these salutary purposes without any chance that the appeal will later turn out to have been unnecessary or duplicative, the two chief concerns animating the rule that an appeal generally must await entry of judgment as to all remaining claims.

Not only do these circumstances make a compelling case for Rule 54(b) certification, the fact is, as the Seventh Circuit found in *In re General Motor Corp. Engine Interchange Lit.*, 594 F.2d 1106 (7th Cir. 1979), there is "considerable doubt" whether the resolution of all claims brought on behalf of a particular subclass is even subject to the restrictions of Rule 54(b). *Id.* at 1117, n.11. The Seventh Circuit concluded in that case it had jurisdiction to determine the fairness of a settlement of one subclass's claims even in the absence of a Rule 54(b) order, explaining that the settling subclass's suit "arguably should be ***treated as a separate lawsuit*** outside the ambit of Rule 54(b)." *Id.* (emphasis added) ("this practical view of the position of the subclasses accords with the legal effect of creating subclasses under [Rule 23]"). The Seventh Circuit reasoned that because "[e]ach subclass must independently meet the requirements of Rule 23 in order to be maintained as a class action . . . it seems consistent with the spirit of the [Federal Rules of Civil Procedure] to treat each subclass action as a separate action for all purposes." *Id.* This reasoning is fully applicable here, making Plaintiffs' request for Rule 54(b) certification of the NRD claims brought on behalf of the Cash Balance Formula Class – a Class with no surviving claims – all the more compelling.

**ARGUMENT**

**I.  THE NRD COUNTS SHOULD BE CERTIFIED TO MAKE SETTLEMENT POSSIBLE AND TO AVOID THE RISK OF A SECOND TRIAL ON THE 401(k) TRANSFER COUNT.**

Rule 54(b) is a vehicle for certifying a portion of a judgment for immediate appeal even while the rest of the case remains pending. It provides:

> When an action presents more than one claim for relief - whether as a claim, or counterclaim, cross-claim, or third-party claim - or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

Fed. R. Civ. P. 54(b).

While "Rule 54(b) certification is recognized as the exception rather than the norm," *Braswell Shipyards, Inc. v. Beazer East, Inc.,* 2 F. 3d 1331, 1335 (4th Cir. 1993), the moving party does not need to show "harsh" or "unusual circumstances" to meet its burden. *Curtiss-Wright Corp.,* 446 U.S. at 9-10. *See, e.g., Couick v. Wyeth, Inc.*, No. 3:09-cv-210-RJC-DSC, 2010 WL 1837912, *2 (W.D.N.C. May 6, 2010) (Conrad, C.J.) (certifying adjudicated claims under Rule 54(b) after weighing *Braswell* factors).

The court's determination of whether to enter final judgment involves two steps. *Curtiss-Wright Corp.,* 446 U.S. at 7-8. First, the Court must determine whether the judgment is final with respect to the relevant claims or parties. *Id.* at 7. Second, the Court must determine whether there is any "just reason for delay" in entering a judgment, which involves consideration of "judicial administrative interests as well as the equities involved." *Id.* Likening the district court to a "dispatcher," to whose "sound judicial discretion" is left the determination regarding the appropriateness of immediate appeal, the Supreme Court emphasized in *Curtiss-Wright Corp.* that a trial court's assessment that there is no just cause for delay "can only be overturned if the appellate court finds that the district judge's conclusion was **clearly** unreasonable." *Id.* at 11 (emphasis added); *see also id.* at 11-12 ("the discretionary judgment of the district court should be given **substantial** deference"; trial court's "assessment merits **substantial** deference on review") (emphasis added).

### A. Final Judgment

There is no question that the Court's Orders as to Counts One and Three constitute a final decision on those counts. The Court dismissed the NRD Counts in its Amended Order dated December 7, 2010 (Doc. 256). It denied Plaintiffs' motion for reconsideration as to Count Three

5

in its Order dated January 7, 2011 (Doc. 257). The Court's Orders dismissing Counts One and Three terminated all claims under those counts. The Orders are ultimate dispositions of those claims that grant complete relief to Defendants. Hence, the Orders qualify as "final judgments" with respect to the claims under Counts One and Three and thus meet the first requirement for certification under Rule 54(b). *Curtiss-Wright Corp.*, 446 U.S. at 7; *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978) (if the court's decision "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment" entered on that claim, then the decision is "final").[1]

### B. No Just Reason for Delay

The real issue is whether there is any just reason for delaying entry of final judgment as to the NRD Count lawsuit. As outlined above, there is not – to the contrary, there is every reason to allow the appeal of the dismissal of the NRD lawsuit to go forward now.

The Fourth Circuit has explained that the determination as to whether there is "no just reason for delay," so as to permit certification for immediate appeal of final judgment entered on less than all of a party's claims, is necessarily case-specific and may involve consideration of factors such as: (i) the relationship between adjudicated and unadjudicated claims; (ii) the possibility that need for review might be mooted by future developments in unadjudicated claims; (iii) the possibility that reviewing court might be obliged to consider same issue on subsequent appeal from unadjudicated claims; (iv) the presence or absence of claims or counterclaims that could result in setoff against judgments sought to be made final; and (v) miscellaneous factors such as delay, economic insolvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like. *Braswell,* 2 F.3d at 1335.

---

[1] Count Two was dismissed with the consent of both parties in an Order dated April 7, 2010 (Doc. 234). Plaintiffs have no intention of appealing Count Two.

None of these factors alone is dispositive, and even if some are not favorable to certification, as noted above, the Supreme Court said in *Curtiss-Wright Corp.,* they might "be offset by a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims." *Curtiss-Wright Corp.,* 446 U.S. at 8 n.2 (emphasis added). Here, all factors, ***plus*** the fact that an immediate appeal will facilitate settlement, ***plus*** the fact that the Cash Balance Formula Class's case for all intents and purposes is a totally separate lawsuit than the one brought on behalf of the Cutback Class, weigh in favor of certification.

**Factor #1:** *The relationship between the adjudicated and un-adjudicated claims*.

The legal issues under the NRD Counts and the 401(k) Count are distinct and accordingly are "separable from the others remaining to be adjudicated" within the meaning of *Curtiss-Wright Corp.*, 446 U.S. at 8. *See also MCI Constructors, Inc. v. City of Greensboro,* 610 F.3d 849, 856 (4th Cir. 2010) (claim properly certified because adjudicated claims were legally distinct from unadjudicated claims even where both "arise out of a common set of facts"). However, there is a relationship between the adjudicated NRD claims and the unadjudicated 401(k) claims that strongly counsels in favor of immediate certification of the NRD Counts – because the alleged invalidity of the Bank Plan's NRD is central to three of Plaintiffs' fiduciary breach contentions under Count Four:

- *First*, the Complaint alleges that the fiduciaries of the 401(k) and Pension Plans breached their duties of prudence and loyalty under ERISA by implementing the 401(k) asset transfers because, among other reasons, they knew or should have known that the transaction constituted a transfer of participant assets into the proverbial lion's den: a Pension Plan that intended to calculate benefits and determine benefit distribution options by reference to a potentially-unlawful

7

Normal Retirement Date.  *See* FAC ¶ 42.

- *Second*, the Complaint alleges that the fiduciaries of the Pension Plan breached their duties by implementing the service-based NRD that was considered integral to the Profit Producer scheme, even though they knew or should have known that the NRD was at significant risk of being struck down as unlawful.  *Id.*
- *Third*, the Complaint alleges that the fiduciaries of the Pension Plan breached their duties when they implemented the service-based NRD because they knew or should have known that it would likely require the Pension Plan to expend Plan assets defending the aggressive and potentially-unlawful NRD.  *Id.*

The alleged impropriety of the fiduciaries' conduct in these regards ultimately turns on the Pension Plan's NRD being unlawful.  Accordingly, if the Court of Appeals is going to agree with Plaintiffs that the Plan's NRD is unlawful, it behooves everyone to know that before litigation on Count Four is completed; otherwise, reversal on NRD could require an expensive, duplicative trial or further proceedings on the fiduciary aspects of the 401(k) Transfer Count.  *See, e.g., Purdy Mobile Homes, Inc. v. Champion Home Builders Co.*, 594 F.2d 1313, 1316-17 (9th Cir. 1979) (certification proper where if review of dismissal of Robinson-Patman Act claims were delayed until after the trial on the state claims, reversal likely would require a second trial; also noting interpretation of Act upon which dismissal was premised was the subject of disagreement in the courts); *Wiav Solutions LLC v. Motorola*, Civil No. 3:09cv447, 2010 WL 883748, *3 (E.D. Va. March 9, 2010) (while there was a risk that immediate appeal on one aspect of a case could result in two separate appeals, it was equally true that "*delaying* certification could also result in two trials and possibly two appeals") (emphasis added).

At a minimum, it would "streamline" matters if both sets of claims were handled together

at trial. *See Fox v. Baltimore City Police Dept.,* 201 F.3d 526, 532 (4th Cir.2000) (certification appropriate whether resolution on appeal of legal issue affected the adjudicated claims "will streamline the resolution of" the remaining claims); *VanBuren v. Va. Highlands Orthopaedic Spine Center, LLC*, 728 F.Supp.2d 791, 802 (W.D. Va. 2010) (certifying under Rule 54(b) even though "relationship between the adjudicated claims and unadjudicated claims is very close" because if an appeal on the adjudicated claim was delayed and then "the appellate court [later] determines Plaintiff may proceed" on that claim, "[t]he parties and this Court would potentially have to be involved in repetitious discovery, pre-trial motions, and a trial").

**Factor #2:** *The possibility that the need for review might or might not be mooted by future developments in the district court.*

There is no possibility that developments in the 401(k) Transfer litigation will obviate the need for the Fourth Circuit to review Plaintiffs' NRD-legality contentions. Clearly, proceedings regarding whether Defendants' 401(k) Transfer scheme constituted breaches of fiduciary duty and unlawful cutbacks – and how participants should be made whole and Defendants required to disgorge the profits and savings they realized as a result of the scheme – will not implicate, and cannot conceivably moot, the need for the Court of Appeals to review this Court's NRD-legality ruling. This weighs in favor of certification. *E.g., Fox,* 201 F.3d at 531 ("[t]he central question raised on appeal-whether the 1986 amendments to VRRA apply retroactively-is a pure question of law. We foresee nothing that could emerge from further proceedings that would either alter our analysis of this question or render it moot"); *Couick*, 2010 WL 1837912, *2 (certifying dismissed adjudicated claim, noting "there is no possibility that the need for review might be mooted by future developments in this Court").

9

**Factor #3:** *The possibility that the reviewing court might be obliged to consider the same issue a second time.*

Assuming the 401(k) Transfer claims also end up on the Fourth Circuit's docket some time in the future, the Court would not be reviewing the NRD legality issue a second time. This also weighs in favor of certification. *Couick*, 2010 WL 1837912, *2 (certifying dismissed adjudicated claim, noting "there is no possibility that the reviewing court would need to consider later the same issue a second time, because the dismissed claims involve a legal issue distinct from the remaining claims"); *Lerose v. Coger*, No. 2:03-2372, 2007 WL 712875, *2 (S.D.W.Va. March 6, 2007) ("[i]f reversal occurs and the case is remanded, one has difficulty constructing a scenario by which the matters first addressed on appeal would come up for resolution anew . . . following entry of final judgment after trial"); *Neuberger Bergman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B*, 225 F.R.D. 171, 174-76 (D. Md. 2004) ("the Fourth Circuit would not have to decide the same issues more than once even if there were subsequent appeals").

**Factor #4**: *The presence or absence of a claim or counterclaim which could result in a set-off against the judgment sought to be made final.*

Defendants have not asserted any claims or counterclaims against Plaintiffs or any other members of the Classes certified by the Court, much less a claim that could result in a set-off. This also weighs in favor of certification. *E.g., VanBuren*, 728 F.Supp.2d at 802.

**Factor #5:** *Miscellaneous factors such as delay, economic insolvency considerations, shortening the time of trial, frivolity of competing claims, expense, and the like.*

Other miscellaneous factors weigh in favor of certification.

*First,* an immediate appeal of the NRD Counts would not adversely affect forward progress on the 401(k) Transfer Count given how long it is likely to take just to get the rudimentary data and documents from the Bank. Nearly four months ago, the Bank said it would

10

turn over to Plaintiffs its IRS audit file (which Plaintiffs actually requested 5 years ago, *see* Pls. Mot. to Compel (Doc. 190) at 2), without awaiting a discovery request, *see* Joint Rule 26(f) Plan (Doc. 249) at 2 ("Defendants are willing to produce to Plaintiffs in advance of any discovery request materials sent to or received from the Internal Revenue Service ('IRS') related to the 401(k) one-time transfers in connection with the IRS Audit (the 'IRS Material')"), and still has not done so. And the Bank is resisting the common sense means of further streamlining this litigation by, as Plaintiffs propose in the Rule 26(f) Plan, sharing the materials exchanged with the plaintiffs or otherwise generated in connection with the putative class action, *David v. Alphin*, No. 3:07-cv-11-RJC-DLH (W.D.N.C.) (alleging self-dealing, excessive fees and inferior returns from the investment of 401(k) Plan assets not transferred to the Pension Plan). *See* Joint Rule 26(f) Report at 2, 3, 6.[2] However the Court decides to handle the *David v. Alphin* materials issue, if the NRD Counts are certified, the Fourth Circuit will have rendered a definitive ruling on the NRD's legality long before Plaintiffs will be in a position to even begin fact witness depositions in this case.

*Second,* the age of this case and the prospect of additional years of drawn-out litigation weighs in favor of certification. *See David v. Alphin*, Doc. 173 (June 14, 2010 order noting that despite the fact that the court has "entered more than a dozen orders" including orders compelling Bank Defendants to produce documents, "progress in this matter has been painfully slow"). This case, originally filed in the Southern District of Illinois on June 30, 2004, has now been pending for well over 6 years. Both sides, but Cash Balance Formula Class members in particular, have an interest in getting this case resolved one way or another. *See Curtiss-Wright*

---

[2] The *David v. Alphin* materials are likely to be relevant to Count Four's fiduciary breach and prohibited transaction claims, which were not directly addressed by the IRS audit because these issues are outside the IRS's enforcement jurisdiction.

*Corp.*, 446 U.S. at 11 (relevant "that absent Rule 54(b) certification [plaintiffs] would not be paid for 'many months, if not years' because the rest of the litigation could be expected to continue for that period of time"). An immediate appeal of the NRD claims holds out hope that Cash Balance Formula Class members might receive additional benefits without having to wait years more.

**Factor #5:     Appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims**

Review by the Fourth Circuit now of the Court's dismissal of Plaintiffs' NRD Counts will advance the resolution of the unadjudicated claims in Count Four, the 401(k) Transfer Count by making possible a settlement of those 401(k) Transfer claims where no settlement is otherwise likely to occur because of uncertainty as to the ultimate outcome of the NRD Counts. *Curtiss-Wright Corp.,* 446 U.S. at 8 n.2 ("a finding that an appellate resolution of the certified claims would facilitate a settlement of the remainder of the claims" could alone merit entry of judgment on the adjudicated claims). If an immediate appeal is not allowed, there is virtually no chance that the case will settle short of trial (or at least full blown cross-motions for summary judgment). At the parties' 2009 mediation, the Bank made clear it seeks a global settlement of all claims yet, citing *Fry v. Exelon,* 571 F.3d 644 (7th Cir. 2009), made equally clear that it credited the NRD claims as having nothing more than nuisance value, notwithstanding the fact that Plaintiffs had the backing of *Laurent v. PricewaterhouseCoopers, LLC*, 48 F.Supp.2d 537 (S.D.N.Y. 2006), *relying on Duchow v. N.Y. State Teamsters Conf. Pens. and Ret. Fund*, 691 F.2d 74, 78 (2d Cir. 1982), and, Plaintiffs submit, the IRS. This Court's ruling last year agreeing with *Fry* will have only solidified the Bank's position in that regard.

But Plaintiffs cannot and will not settle the NRD Counts for less than significant value because Plaintiffs have "strong arguments" (Doc. 256 at 7) that the Bank Pension Plan's NRD is

12
Case 3:05-cv-00238-GCM   Document 261   Filed 02/04/11   Page 12 of 15

unlawful and a determination by the Court of Appeals that the Plan's NRD is unlawful would all but ensure a very significant judgment for Plaintiffs.[3] Accordingly, for the 401(k) Transfer claims to settle, the NRD Counts must settle (or otherwise be resolved), but for those Counts to settle, the parties need to hear from the Fourth Circuit on the issue of the NRD's legality.

Reversal of this Court's ruling will of necessity make the Bank amenable to discussing a settlement of the NRD Counts other than on a nuisance value basis. So too, affirmance would clear the way to the parties working on a fair settlement of just the 401(k) Transfer claims. This weighs heavily in favor of certification. *See, e.g., Aiken County v. Bay-Con General, Inc.*, 657 F.Supp. 1339, 1345 (D.S.C. 1986) (certifying claim under Rule 54(b) in part because "an appeal [of the claim] will probably be necessary before any party will accept liability on such a large issue"); *VanBuren*, 728 F.Supp.2d at 801 (among the reasons for certification was the fact that an immediate appeal "may facilitate settlement between the parties," thereby promoting judicial economy).

## CONCLUSION

Wherefore, for the reasons set forth herein and for such other reasons as may appear to the Court, Plaintiffs respectfully request that the Court enter an Order directing entry of final judgment under Rule 54(b) as to the claims asserted in Counts One and Three of the Complaint.

February 4, 2011                     Respectfully submitted,

                                     _____ s/ Eli Gottesdiener
                                     Eli Gottesdiener
                                     Admitted *Pro Hac Vice*

---

[3] Defendants have never challenged Plaintiffs' assertion that the Plan is unlawfully backloaded using a normal retirement age of 65, and barely contested Plaintiffs' whipsaw claims assessed on the same basis. *See* Def. MTD (Doc. 151-1) at 2 n2. If the Plan's NRD is invalid, benefits due participants under Count Three alone could easily total many tens of millions of dollars.

Gottesdiener Law Firm, PLLC
498 7th Street
Brooklyn, New York 11215
Phone: (718) 788-1500
Fax: (718) 788-1650
E-mail address: eli@gottesdienerlaw.com


Thomas D. Garlitz
North Carolina State Bar No. 8277

Thomas D. Garlitz, PLLC
212 South Tryon Street, Suite 930
Charlotte, NC 28281
Telephone: (704) 372-1282
Fax: (704) 372-1621
E-mail address: tgarlitz@gwattorneys.com

Attorneys for Plaintiffs and the Classes

## CERTIFICATE OF SERVICE

I hereby certify that I caused all Defendants, through their counsel listed below, to be served on February 4, 2011, with a copy of the foregoing in accordance with Administrative Procedures Governing the Filing and Service by Electronic Means, II.B.3 at page 8, by causing the Electronic Filing System to send a Notice of Electronic Filing to them as follows:

Irving Michael Brenner
Peter Covington
Helms, Mulliss & Wicker, PLLC
201 N. Tryon St.
Charlotte, NC 28202
Telephone: 704-343-2075
Fax: 704-343-2300
irving.brenner@hmw.com
peter.covington@hmw.com

William F. Conlon
Priscilla E. Ryan
Jeffrey R. Tone
Anne E. Rea
Erin E. Kelly
Sidley Austin Brown & Wood LLP
10 South Dearborn Street
Chicago, IL 60603
Telephone: 312-853-7000
Fax: 312-853-7036
wconlon@sidley.com
pryan@sidley.com
jtone@sidley.com
area@sidley.com
ekelly@sidley.com

**Attorneys for Bank of America Defendants**

　　　　　/s/Eli Gottesdiener
　　　　Eli Gottesdiener