IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:05-cv-00238-GCM

| | |
|---|---|
| WILLIAM L. PENDER, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| vs. ) | ORDER |
| ) | |
| BANK OF AMERICA CORP., et al., ) | |
| ) | |
| Defendants. ) | |

THIS MATTER comes before the Court on Defendants' Motion in Limine to Exclude Expert Testimony of Clark L. Maxam and Lawrence Deutsch. As detailed in this Order, the Court now DENIES Defendants' Motion to Exclude [Doc. 352].

I. Factual Background

This matter arises out of the decision by NationsBank, a company that subsequently merged with Bank of America ("the Bank"), to allow its employees to transfer their 401(k) assets to a cash balance defined benefit plan ("the Pension Plan"). Because the decade-long procedural history in this case has been well documented elsewhere, the Court will recite only the facts relevant to the present proceeding. *See Pender v. Bank of America*, 2013 WL 4495153, No. 3:05-cv-00238-GCM (W.D.N.C. Aug. 19, 2013); *see also Pender v. Bank of Am. Corp.*, 756 F. Supp. 2d 694, 696 (W.D.N.C. 2010), *aff'd sub nom. McCorkle v. Bank of Am. Corp.*, 688 F.3d 164 (4th Cir. 2012).

In its most recent opinion directed at an issue in this case, the Fourth Circuit considered whether the transfer of Plaintiffs' assets from a traditional 401(k) Plan to the Pension Plan entitled

1

them to any monetary remedy. The critical question was whether or not the following difference between the two Plans violated ERISA:

> [Under] [t]he 401(k) Plan[,] participants' accounts reflected the *actual* gains and losses of their investment options. In other words, the money that 401(k) Plan participants directed to be invested in particular investment options was actually invested in those investment options, and 401(k) Plan participants' accounts reflected the investment options' net performance.
>
> By contrast, Pension Plan participants' accounts reflected the *hypothetical* gains and losses of their investment options. Although Pension Plan participants selected investment options, this investment was purely notional. . . . Instead, the Bank invested Pension Plan assets in investments of its choosing, periodically crediting each Pension Plan participant's account with the greater of (1) the hypothetical performance of the participant's selected investment option, or (2) the Transfer Guarantee.

*Pender*, 788 F.3d at 358-59 (footnote omitted) (emphasis in original).

The Fourth Circuit held that the transfers eliminated the separate account feature, which guarantees that participants funds are credited "with the actual gains and losses 'generated by funds contributed on the participant[s'] behalf.'" *Id.* at 360 (alteration in original). The court also held that the separate account feature constituted an "accrued benefit" which the Bank was forbidden from decreasing by a Plan amendment under ERISA. *Id.* at 363–64 (citing ERISA § 204(g)(1)).

Although it is undisputed that the separate account feature has since been restored, Plaintiffs argued that the temporary elimination of the separate account feature entitled them to monetary relief. The court found that Plaintiffs were entitled to relief under § 502(a)(3). *Pender*, 788 F.3d at 363. Again, by eliminating the separate account feature, the Bank had violated ERISA. *Id.* at 363–64 (citing ERISA § 204(g)(1)). Consequently, the only remaining question was whether Plaintiffs sought relief that was equitable in nature. *See id.* at 364. The court found that the requested remedy—which it described as "[a]n accounting for profits"—constituted equitable relief. *Id.* at 364. The court explained that an accounting for profits is "a restitutionary remedy

2

based upon avoiding unjust enrichment," which "holds the defendant liable for his profits, not for damages." *Id.* at 364-65. Because this type of relief is quintessentially equitable, Plaintiffs could proceed with their claims under § 502(a)(3). *Id.* at 367.

After addressing other issues that do not control the present proceeding, the Fourth Circuit vacated this Court's grant of summary judgment and remanded for further proceedings without additional instructions on how the required accounting for profits should be calculated. *See id.* at 370.

On March 10, 2016 this Court issued an order on how best to implement the instructions set out by the Fourth Circuit: the analysis of whether or not the Bank retained a profit should be conducted in the aggregate. (Doc. No. 347) A bench trial was set for November 7, 2016 to decide the issue of whether, after it restored the separate account feature and paid a $10 million fine to the IRS, the Bank nevertheless profited from its transfer strategy. (Id.)

Plaintiff and Defendants have introduced competing expert witnesses in an attempt to explain how to carry out an accounting for profits for the Bank's Pension Plan. The testimony of Plaintiffs' witnesses Clark L. Maxam, a financial economist, and Lawrence Deutsch, an enrolled actuary under ERISA, is called into question here. Defendants filed a motion *in limine* to exclude the testimony of Dr. Maxam regarding the use value of transferred assets and Mr. Deutsch regarding any legal opinions. (Doc. No. 352)

II.     Legal Standard

    A.     Rule 702

Federal Rule of Evidence 702, which governs the evaluation of expert testimony, provides as follows:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact at issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Under the Supreme Court's decision in *Daubert*, there is a two-part test for expert testimony to be admitted "(1) the expert testimony must consist of 'scientific knowledge'-that is, the testimony must be supported by appropriate validation; *and* (2) the evidence or testimony must 'assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Dorsey,* 45 F.3d 809, 813 (4th Cir. 1995) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 591 (1993).

The district court acts as a gatekeeper to "ensure that any and all scientific testimony . . . is not only relevant, but reliable." *Daubert*, 509 U.S. at 589. The *Daubert* gatekeeping function has been expanded to encompass not only scientific testimony, but any expert testimony involving technical or other specialized knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). The burden of establishing admissibility is on the proponent of the testimony and must be shown by a preponderance of the evidence. *Daubert*, 509 U.S. at 592 n.10.

The second prong of this test concerns the relevancy or "fit" of the expert's testimony. It requires the district court to ask if the expert's testimony "can be applied to the facts in issue." *Daubert*, 509 U.S. at 593. "The test for relevance, or 'fit,' considers 'whether expert testimony

proffered in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *Viva Healthcare Packaging USA Inc. v. CTL Packaging USA Inc.*, 2016 WL 3727484 at *2 (W.D.N.C. 2016) (quoting *Daubert*, 509 U.S. at 591).

   III.   Discussion

      A. Clark L. Maxam

Dr. Maxam was asked by the Plaintiffs to calculate the amount of interest the Bank would have paid to borrow the transferred assets under its control during the Pension Plan. (Doc. No. 352 at 2). He opines that the Bank retained an "extremely valuable benefit" by controlling the transferred assets over the 11 year period and calculates this benefit by determining the interest that would have been paid on the open market to use this amount of funds. (Id.). This calculation encapsulates the value the Bank received by controlling the transferred assets under the Pension Plan and is labeled the use value. (Doc. No. 352 at 3).

The Defendants have not argued that Dr. Maxam is incompetent or that his testimony about the use value calculation is unreliable in anyway. Instead, they ask the Court to rule that as a matter of law the use value calculation is not a requirement of the accounting for profits prescribed by the Fourth Circuit. (Doc. No. 353 at 1). The Plaintiffs argue that this calculation directly applies to the facts at issue, it is related to how to calculate the accounting for profit. (Doc. No. 359 at 5).

The Defendants' motion attacks the *probative value* of the use value in this case. However, the determination the Defendants ask the Court to make in excluding evidence under Rule 702 is not to assess the probative value of Dr. Maxam's testimony, it is to exclude the testimony of Dr. Maxam because it contains so little relevance that it cannot be applied to the facts at issue. *See Daubert*, 509 U.S. at 595 ("The inquiry envisioned by Rule 702 is, we emphasize, a flexible one .

5

. . The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate). These are two different analyses. *See id* (describing the Rule 403 analysis of probative value of expert testimony as it relates to the Rule 702 analysis). In deciding the motion *in limine* submitted by the Defendants this Court makes no determination as to the probative value of the use value calculation of Dr. Maxam's testimony.

### B.  Lawrence Deutsch

Mr. Deutsch is an enrolled actuary under ERISA. (Doc. No. 353-4 at 2). He was retained by the Plaintiffs to determine how the accounting for profits prescribed by the Fourth Circuit should be performed and to assess the calculations done by both of the Defendants' experts. (Id.).

The Defendants wish to exclude the testimony of Mr. Deutsch offering any legal opinions. They claim that parts of Mr. Deutsch's testimony are actually opinions on the proper application of law and are therefore inadmissible. The Defendants point to Mr. Deutsch's testimony about ERISA standards, for instance what should be included in ERISA-compliant 401(k) plan accounting. The Plaintiffs argue this testimony is actually opinions on the facts based on Mr. Deutsch's expertise as an enrolled actuary.

As this is a bench trial, the Court can freely accept or reject an expert's testimony at trial as the trier of fact. The Court is confident that the defense counsel will be able to point out any inadmissible legal opinions testified to at trial. There has been no compelling reason presented to not, as the Plaintiffs suggest, "if it turns out the Court ultimately decides that one or more of Mr. Deutsch's opinions cross the line from 'actuarial' to 'legal,' the Court can simply say it disregards such testimony." (Doc. No. 359 at 9–10; *See also id* at 10 ("Plaintiffs are confident that the Court

will be able to separate out the factual wheat from any legal chaff when considering Mr. Deutsch's testimony")).

**IT IS, THEREFORE ORDERED that:**

(1) Defendants' Motions in Limine [Doc. No. 352] is DENIED.

SO ORDERED.

Signed: October 20,

Graham C. Mullen
United States District Judge