**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:05-CV-00238-GCM**

| | |
|---|---|
| WILLIAM L. PENDER, ET AL., | ) |
| **Plaintiff,** | ) ) ) |
| v. | ) **ORDER** |
| BANK OF AMERICA CORP., ET AL., | ) ) ) |
| **Defendant.** | ) ) |

**THIS MATTER** is before the Court upon the Defendants' Objections to Plaintiffs' Proposed Trial exhibits (Doc. No. 318), Plaintiffs' Post-Trial Memorandum in Support of their Evidentiary Contentions (Doc. No. 382), and Defendants' Response to Plaintiffs' Post-Trial Memorandum in Support of their Evidentiary Contentions (Doc. No. 385). After all evidence was presented at trial, the Court instructed both parties to file a brief document with the Court detailing which, if any, exhibits the party objected to and why. (Tr. 573). The Court has considered all of the issues raised by the parties.

**I.  Defendants' Objections to Plaintiffs' Proposed Trial Exhibits**

   **a)  Expert Reports**

Plaintiffs moved to introduce into evidence the parties' experts' reports and accompanying exhibits, (PX 69-73, 76, 77, 112, and 113). This issue was previously fully briefed by both parties and the Court issued an order on November 4 ruling that the expert reports were inadmissible hearsay under FRE 801, 403, and 611(a). (Doc. No. 379).

The Plaintiffs have not offered sufficient reasons for the Court to change its prior ruling. Even if the Court were to accept Plaintiffs' reasons for including the expert reports, this only refutes the FRE 801 hearsay objection. The expert reports are hundreds of pages and what the Plaintiffs purport to be showing through the reports is needlessly cumulative since the experts gave live testimony, in violation of FRE 403, and wastes time in violation of FRE 611(a). Fed. R. Evid. 403, 611(a). So, the previous Court order excluding the expert reports from evidence is still valid

### b) Towers Perrin Documents

Plaintiffs moved to introduce two documents authored by Towers Perrin, (PX 3 and 20) an independent consulting firm. PX 3 is a May 1998 internal memorandum from four individuals at Towers Perrin to "Retirement." PX 20 includes a September 2001 letter from someone in Towers Perrin's "Legal Resources" group to the IRS. PX 20 makes clear that PX 3 "was not prepared at the request of Bank of America." (Px 20 at 3).

Neither of these were mentioned during the trial. Each document is an out-of-court statement, made by a third part, offered to prove the truth of the matter asserted. Neither document was written by any one at the Bank nor was either prepared at the request of the Bank. These documents are excluded under FRE 802 as hearsay. Fed. R. Evid. 802.

### c) June 19, 2000 News Article

Plaintiffs moved to introduce a June 19, 2000 Wall Street Journal article. (PX 16). The Plaintiffs put the Court in a difficult situation because this document is not referenced during trial and so the reason for its inclusion is unclear. On the cover page of the exhibit, the Plaintiffs write that this article is on the list of documents considered attached to the Deutsch report.

2

However, this does not clarify the reason the Plaintiffs seek to introduce this exhibit. This exhibit is barred to prove the truth of the matter asserted as hearsay under FRE 802. *See Greene v. Scott*, 637 Fed. Appx. 749, 752 (4th Cir. Feb. 11, 2016) (unpublished, per curiam) (quoting *Nooner v. Norris*, 594 F.3d 592, 603 (8th Cir. 2010) ("Newspaper articles are rank hearsay.")).

In addition, the article purports to quote others, which constitutes hearsay within hearsay. Therefore, PX 16 is also inadmissible under FRE 805. Fed. R. Evid. 805.

### d) IRS Settlement Communications

Plaintiffs moved to introduce documents constituting interim settlement communications between Defendants and the IRS. (PX 34-39, 42, 45 and 117). The Court has already held that these documents were inadmissible under FRE 408 in its Order on August 19, 2013 (Doc. 312). This remains the law in this case and the Plaintiffs have not introduced any evidence to reconsider the prior decision.

This Court has explained that it will reconsider a prior decision "only where (1) there has been an intervening change in controlling law, (2) there is additional evidence not previously available, or (3) the prior decision was based on clear error or will work a manifest injustice." *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 2010 WL 3212030, at *1 (W.D.N.C. Aug. 12, 2010) (Mullen, J.). None of the circumstances warranting reconsideration is present here. FRE 408 is the same now as it was three years ago and it is undisputed—now, as it was then—that these materials were created as part of Defendants' efforts to settle the IRS audit. *See Gluck v. United States*, 84 Fed. Cl. 609, 615 (Fed. Cl. 2008) (refusing to consider IRS's settlement position because FRE 408 bars consideration of settlement negotiations between the IRS and a taxpayer). Therefore the documents constituting interim settlement communications

between Defendants and the IRS (PX 34-39, 42, 45 and 117) are barred from being introduced as evidence under FRE 408. Fed. R. Evid. 408.

The Plaintiffs did suggest during trial that the Defendants opened the door to interim settlement communications by discussing the terms of the IRS Closing Agreement. However, the terms of the final IRS Closing Agreement were directly relevant to issues of the costs the Defendants were obligated to incur and merely discussing the terms of the closing agreement does not open the door to all settlement communications.

### e) Mediation Settlement Communications

Plaintiffs moved to introduce a May 2009 letter from Plaintiffs' counsel to Defendants' counsel during an attempt to mediate this dispute. (PX 97). This letter states it is asking for additional information "to make a mediation demand." PX 97 at 1. Plaintiffs offer this evidence to show that they sought use value discovery in 2009. (Doc. No. 382 at 33). However, PX 97 is a statement made during an attempt to mediate the dispute and so it is not admissible to prove the validity of the claim. Fed. R. Evid. 408. So, this letter is barred from being admitted as evidence under FRE 408. *Id.*

### f) Discovery Emails Between Counsel and Discovery Requests (PX 67, 103 and 107)

Plaintiffs moved to introduce their September 2015 discovery requests and certain emails between Plaintiffs' and Defendants' counsel regarding discovery. PX 67 is offered to show Plaintiffs requested discovery regarding use-value calculation in 2015. (Doc. No. 382 at 33). PX 103 and 107 are offered to show the Plaintiffs sought greater data during discovery than they received. (*Id.* at 34).

The Court's March 11, 2016 Order permitted the parties to file discovery motions, requiring only that the movant (a) meet and confer as required by Local Rule 7.1, and (b) request a conference with the Court prior to filing a motion. (Doc. 347 at 13, § II.A-D.) The March 2016 Order further expressly stated that any discovery motion "should be filed as soon as possible" (*id*. § II.A.), making clear that both sides must be ready for trial in November. But after the March 2016 Order, Plaintiffs never requested a conference with the Court to seek additional discovery or filed a motion to compel. A trial is not the forum to raise discovery disputes

The Plaintiffs' evidence regarding discovery disputes is irrelevant to the current proceeding and is therefore barred under Fed. R. Evid. 402 and 403. Fed. R. Evid. 402, 403.

g) **Evidence Exhibits that Plaintiffs Failed to Show any Witness or Otherwise Use During the Trial**

At the end of trial testimony, after both sides had put on their witnesses, Plaintiffs moved to introduce 95 documents by exhibit numbers. These were plaintiffs' exhibits 2-23, 25-43, 45-47, 49-52, 54-73, 76, 77, 82, 83, 86, 87, 97-117. Many of these exhibits are extraordinarily voluminous. Only the following exhibits were present to or discussed with any witnesses or the Court during either Defendants' or Plaintiffs' cases: the nine exhibit reports (PX 69, 70, 71, 72, 73, 76, 77, 112, 113), the Andreasen declaration (PX 68), and 2015 Form 5500 (PX 102). Aside from the expert reports, the only exhibits of these 95 that are mentioned in Plaintiffs' pre-trial memorandum or proposed findings of fact and proposed conclusions of law are PX 16, 34, 67, 68, 97, and 107. This leaves 79 exhibits that the plaintiffs introduced at the end of trial that were not mentioned or discussed during the Defendants' or Plaintiffs' cases or mentioned in the Plaintiff's proposed findings of fact and proposed conclusions of law.

It is improper for the Plaintiffs to attempt to inject these documents into the record now, after all the witnesses testified, leaving the Court trying to guess their relevance. Plaintiffs' improper and untimely attempt to move 95 exhibits into evidence after all witness testimony was presented leaves the Court in an untenable position. The Court should not be expected to scour the Plaintiffs' hundreds of pages of proposed exhibits to determine the possible significance of each document without the benefit of testimony from both sides about the documents. "Courts are entitled to assistance from counsel, and an invitation to search without guidance is no more useful than a litigant's request to a district court at summary judgment stage to paw through the assembled discovery material." Albrechtsen v. Bd. of Regents of U. of Wisconsin Sys., 309 F.3d 433, 436 (7th Cir. 2002).

In the absence of actual use at trial or in their proposed findings of fact and proposed conclusions of law, the Plaintiffs have made no showing that the remaining 79 exhibits are relevant under FRE 402 and allowing them to be admitted would be unfairly prejudicial under FRE 403 for the reasons set forth above.

## II.   Plaintiffs' Objections to Defendants' Proposed Trial Exhibits

### a) Andreasen Evidence

Plaintiffs argue that the Andreasen Calculation (Defs. Ex. 100-01) should be barred because Mr. Andreasen should not have been allowed to testify since the Plaintiffs did not have an opportunity to take his deposition.

Plaintiffs' objections to Mr. Andreasen's trial testimony are untimely under Fed. R. Evid. 103(a)(1)(A) and are therefore waived. As the Fourth Circuit has explained, objections are timely only if they are "made at the time the evidence is offered," and "an objection not properly

invoked is *waived.*" *United States v. Parodi*, 703 F.2d 768, 783 (4th Cir. 1983) (internal quotation marks omitted; emphasis in original); *see also United States v. Cabrera-Beltran*, 660 F.3d 742, 751 (4th Cir. 2011) (noting that "[a]n objection to the admission of evidence must be both specific and timely"). The rule requiring contemporaneous objections is designed to ensure that parties "bring objections to the attention of the court and the opposing party at the earliest possible time so as 'to alert [the court] to the proper course of action and enable opposing counsel to take proper corrective measures.'" *United States v. Carson*, 52 F.3d 1173, 1187 (2d Cir. 1995) (quoting Advisory Committee's Note to Rule 103(a)(1)); *see also United States v. Meserve*, 271 F.3d 314, 325 (1st Cir. 2001) (same).

Mr. Andreasen was identified by Defendants as a trial witness in their September 26, 2016 trial brief (Doc. 354 at 4) and again in their October 7, 2016 pre-trial disclosures pursuant to Fed. R. Civ. P. 26(a)(3)(A)(i). (Doc. 358 at 2.) Plaintiffs did not raise any objection with the Court at that time; nor did they raise any issue regarding his testifying in the telephonic pre-trial conference that was held with the court on October 26, 2016. In fact, Plaintiffs never objected to Mr. Andreasen's trial testimony until a week after trial. *Compare, e.g.*, *United States v. Kanovsky*, 618 F.2d 229, 231 (2d Cir. 1980) (holding that objection to testimony was untimely where the objection was first raised after witness was excused).

Even if this objection to Mr. Andreasen's testimony was timely, this discovery issue argument would fail. Plaintiffs argue that Defendants failed to "offer up Mr. Andreasen for a pre-trial deposition." (Doc. No. 382 at 9.) But, Plaintiffs never served a notice of deposition or asked Defendants in any manner—through motion, email, telephone call or otherwise—to depose Mr. Andreasen. (Doc. No. 385 at 5). Plaintiffs knew that Mr. Andreasen had discoverable

information and was a likely trial witness in December 2015 when Mr. Andreasen submitted his Declaration to this Court.

Plaintiffs also cite this Court's March 11, 2016 Order, in an attempt to suggest that they were judicially "precluded" from seeking to take Mr. Andreasen's deposition. But that Order did not preclude motions for additional discovery if a party determined that it was needed, and was prepared to make a showing of such need. To the contrary, the March 11 Order permitted the parties to file discovery motions, requiring only that the movant (a) meet and confer as required by Local Rule 7.1, and (b) request a conference with the Court prior to filing a motion. (Doc. 347 at 13). Further emphasizing the availability of discovery, the March 11 Order said the parties should file discovery motions "as soon as possible." (*Id.* at 13). Plaintiffs never took advantage of that procedure. Plaintiffs never asked to depose Mr. Andreasen, requested to meet and confer regarding his deposition, or brought a motion or requested a conference with the Court to seek additional discovery.

Plaintiffs next argue that the Mr. Andreasen calculation produced on October 7, 2016, which was the third revision of the calculation, should be excluded because October 7 was thirty days before trial and thus was untimely, not mentioning that Plaintiffs submitted two additional expert reports on October 20.

This was a timely supplementation of Mr. Andreasen's calculation under Fed. R. Civ. P. 26(e)(1)(A). In the Court's discretion October 7 was not too late for such supplementation of an earlier disclosure. Mr. Andreasen testified that his ongoing validation efforts working with the Plan's record keepers revealed that a small number of the entries in his spreadsheet should be changed. (Tr. 69–70.) This correction of minor errors that had only recently been discovered was not only entirely appropriate but precisely what the Federal Rules envision. Plaintiffs assert that

Defendants violated their discovery obligation by failing to provide the corrected data within the discovery period, yet cite no evidence that the Defendants knew about the updated data by August 15, 2016, which is denied by the Defendants. (Doc. No. 385 at 7).

Plaintiffs also say that they did not realize Mr. Andreasen had revised his calculation until his direct examination because it was included among 257 files that were provided by the Defendants on October 7. A cursory review of the exhibits would have revealed that the resulting loss calculation was slightly different than previous ones, because both the underlying calculation and single page summary of results were provided. Defense Exhibits 100 and 101 show a loss of approximately $149 million, while the immediately prior version of the calculation (marked as a separate exhibit) clearly states a loss of approximately $143 million (*See* Defs. Exs. 99 & 101.). Moreover, Defendants' exhibit list included both versions of Mr. Andreasen calculations, and Defendants' exhibit list made clear that they were different by labeling them as "Return Data – Dollar Impact *(i)*" and "Return Data – Dollar Impact *(ii)*." (Doc. 358 at 11.) Whether or not Plaintiffs (and their experts) failed adequately to look at the marked exhibits, there is no obligation for Defendants to have "pointed out" anything to Plaintiffs about Defendants' exhibits.

All of Mr. Andreasen's calculations have used precisely the same methodology. (Tr. 69.) Taken together, the differences between the two versions only led the calculated losses to increase, from about $141 million to about $149 million. Moreover, almost all of the changes from one version to the next related to the 401(k) transferred balances from July 1998 through July 2000, and Mr. Deutsch himself admitted that the percentage return calculations "don't depend on the transfer balances." (Tr. 483–84.)

9

This supplementation was timely and was in fact required under Fed. R. Civ. P. 26(e)(1)(A). The Defendants are not at fault if the Plaintiffs did not look at the Defendants' exhibit list or notice that the calculation submitted October 7, thirty days before trial, arrived at a different number than the calculation submitted July 22. And this certainly did not "interfere[] with Plaintiffs' right of cross-examination at trial." (Doc. No. 382 at 9). Therefore, the Plaintiffs' objection is overruled.

In addition, Plaintiffs raise a series of objections to the 902(11) declarations submitted by Defendants in this case.

As a result of the validation efforts that Mr. Andreasen oversaw, Defendants obtained and offered at trial a series of declarations under Fed. R. Evid. 902(11), authenticating business records summarized in Defendants' summary Exhibits 100 and 101. Plaintiffs initially suggest that these declarations are "rank hearsay," just like Plaintiffs' expert reports, which the Court excluded from evidence. (Doc. No. 382 at 3.) But as Plaintiffs acknowledge in the very next paragraph of their Objections, 902(11) declarations are *not* just like their expert reports, because Fed. R. Evid. 902(11) expressly "permit[s] a party to establish the authenticity and admissibility of certain material under the business records exception by way of an out-of-court 'certification of the custodian or other qualified person . . . .'" (Doc. No. 382 at 4). A 902(11) declaration is an appropriate mechanism for laying the foundation for the admissibility of a business record, without any requirement that the declarant testify live at trial.

First, Plaintiffs argue that the declarations under Fed. R. Evid. 902(11) do not include statements that the declarant is the "custodian of any data" or is otherwise a "qualified person." But whether the declarant is a "qualified person" is a *legal conclusion*, not a fact to which the declarant is required to attest. What the declarations say is that the declarant is familiar with

"how the records described [in the declaration] were made and kept in connection with [the company's] business activities and operations." (*E.g.*, Defendants' Exhibit 22 at ¶ 4.) That factual predicate is all that is required to establish the legal conclusion that each declarant is a "qualified witness" under Fed. R. Evid. 803(6)—a term the Fourth Circuit "interpret[s] broadly." *United States v. Sofidiya*, No. 97-4681, 1998 WL 743597, at *3 (4th Cir. Oct. 23, 1998); *see also id.* (holding that the Rule "requires only someone who understands the system used to record and maintain the information"); *United States v. Dominguez*, 835 F.2d 694, 698 (7th Cir. 1987) ("The witness need only be someone with knowledge of the procedure governing the creation and maintenance of the type of records sought to be admitted." (internal quotation marks omitted)).

Plaintiffs raise a related concern with regard to a subset of the data supported by the 902(11) declarations. Specifically, Plaintiffs argue that a successor entity is not qualified to attest to the inherited business records of its predecessors—as both Xerox (the successor record keeper to Hewitt) and Callan (the successor investment consultant to Russell) did in this case. (*See* Doc. No. 382 at 20 (challenging Xerox declarant's support for Hewitt data); *id.* at 22 (challenging Callan declarant's support for Russell data).) However, where one firm inherits the records of another, representatives from the successor are qualified to the attest to the business records they have received. *See, e.g.*, *United States v. Adefehinti*, 510 F.3d 319, 326 (D.C. Cir. 2007) (holding that "a record of which a firm takes custody is thereby 'made' by the firm within the meaning of the [business records] rule," and collecting cases so holding); *United States v. Isgar*, 739 F.3d 829, 839 (5th Cir. 2014) (explaining that the business records exception "hinges on the trustworthiness of the records," and that a "court does not abuse its discretion by admitting documents from a custodian that never worked for the employer that created the documents if

11

that custodian explains how she came to possess them and how they were maintained" (internal quotation marks omitted)).

Plaintiffs also speculatively question the accuracy of the Hewitt data, to which Karen Thomas of Xerox attested. (Doc. No. 382 at 20–21.) This is at best a question of weight, not admissibility. Specifically, Plaintiffs assert that two spreadsheets attached to Ms. Thomas's declaration show transferred balances that differ by $270 million during the Hewitt period, which, according to Plaintiffs, shows that one of the spreadsheets must be wrong. However, Plaintiffs' own submission also refers to the explanation for any disparity, *i.e.*, the inclusion of both loans and "unit conversion data" in one of the spreadsheets. (*Id.* at 21.) Plaintiffs contend that "no such explanation or even reference to this issue exists in Ms. Thomas's declaration." (*Id.*) In fact, however, Ms. Thomas's declaration does explain that the spreadsheet in question includes both loans and unit conversion data. (*Compare* Defs. Ex. 22, ¶ 7 (explaining that one spreadsheet "includes participants loans on Transferred Balances valued using unit conversion data provided to ACS by Hewitt"), *with id.*, ¶ 8 (explaining that the second spreadsheet "exclude[s] participant loans on Transferred Balances").)

Second, Plaintiffs argue that the 902(11) declarations—served a month before trial and weeks before Plaintiffs served their third round of expert reports—were disclosed too late. Yet the proponent of a 902(11) declaration need only give an adverse party reasonable written notice, and one month is more than sufficient notice under Fed. R. Evid. 902(11). *See, e.g.*, *United States v. Daniels*, 723 F.3d 562, 581 (5th Cir. 2013) (invoking the "general proposition that five days' notice is sufficient under Rule 902(11)").

Similarly, Plaintiffs claim they had insufficient time to depose the declarants. Plaintiffs never asked to depose any of the declarants or made any request for further testimony from them

12

during a 50-minute meet-and-confer call between the parties on October 19; during the parties' telephonic pretrial call with the Court on October 26; by any pre-trial motion; or during the trial itself. (Doc. No. 385 at 15). While 902(11) provides that a party should have, prior to trial or hearing, a "fair opportunity" to challenge submitted 902(11) declaration, there is nothing in the rule that excuses a party from asking and then seeking pre-trial judicial relief if they believe a "fair opportunity" has been denied. Plaintiffs were provided with the declarations thirty days before the trial and did not seek any deposition of the declarants during that time period. Again, thirty days was more than sufficient notice under Fed. R. Evid. 902(11).

Third, Plaintiffs contend that they were entitled to "examin[e] the declarant[s] under oath at trial" (Doc. No. 382 at 4), and yet Defendants did not bring "the declarants to court so Plaintiffs could call and challenge them at trial," (*id.* at 5). But the entire purpose of the 902(11) process is to allow parties to authenticate "records of regularly conducted activity, *other than* through the testimony of a foundation witness" at trial. Fed. R. Evid. 902, committee's note to 2000 amendment; *see also United States v. Mallory*, 709 F. Supp. 2d 451, 454 n.6 (E.D. Va. 2010) (noting that "the very purpose of Rule 902(11) . . . is to allow for the admission of records . . . without requiring the testimony of a witness"). To impose a requirement that the declarant appear at trial would undermine the purpose of the rule.

Also, Plaintiffs argue that Mr. Andreasen could not lay a proper foundation for the pre-2001 because he did not start working for the Bank in his current capacity until 2001.

For the pre-2001 data, Mr. Andreasen testified based on personal knowledge that the early trial balances from July 1998 through June 2000 were created and maintained by the Bank. (Tr. 83.) Plaintiffs assert that Mr. Andreasen—who knows how these records were made and maintained—is not qualified to address whether the Bank's documents from that period are

13

business records under Fed. R. Evid. 803(6) because he was not then in his present position at the Bank. But there is no rule that requires a qualified witness to have participated in the creation of the records in question. *See, e.g.*, *United States v. Keplinger*, 776 F.2d 678, 693–94 (7th Cir. 1985) (explaining that "the business records exception contains no requirement that a 'qualified witness' must have personally participated in the creation or maintenance of a document," and that "such a requirement would eviscerate the business records exception").

Likewise, Mr. Andreasen provided foundational testimony for the April 2009 data based on his personal knowledge (Tr. 95), and he was more than qualified to do so under the Fourth Circuit's permissive approach to Fed. R. Evid. 803(6). *See Sofidiya*, 1998 WL 743597, at *3.

Thus, Defendants' Exhibits 100-01 are admissible. However the Court would also note that concerns regarding foundational issues should have been raised at trial. Plaintiffs' delay has deprived Defendants of the opportunity to lay a further foundation to satisfy the Court of the admissibility of Defendants' summary exhibits. For example, Defendants could have elicited further testimony from Mr. Andreasen or called additional witnesses to authenticate documents or overcome any asserted hearsay issues. Instead, Plaintiffs allowed Defendants to offer their summary exhibits without objection, waiting until after trial to raise their foundational objections.

In their final objection to evidence relating to Mr. Andreasen's testimony, Plaintiffs argue that Defs. Ex. 104 should be excluded because it was produced on October 7, 2016 and therefore was untimely. However, this was a timely supplementation of Mr. Andreasen's calculation under Fed. R. Civ. P. 26(e)(1)(A). In the Court's discretion October 7 was not too late for such supplementation of an earlier disclosure.

The rest of the Plaintiffs' arguments about the admissibility of Defs. Ex. 104 go to the merits of the exhibit. These arguments do not go to the question of whether the exhibit should be admitted into evidence and any such merit arguments should have been made at trial.

### b) Professor Wermers Evidence

Plaintiffs raise two untimely objections to Dr. Wermers' testimony, both of which are overruled.

First, Plaintiffs seek to exclude Dr. Wermers' opinions under Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). But a request directed at the Court's "gatekeeping role" under *Daubert*, *id.* at 597, must come before the objected-to testimony is offered—and certainly before the end of trial. *Alfred v. Caterpillar, Inc.*, 262 F.3d 1083, 1087 (10th Cir. 2001) ("Counsel should not 'sandbag' *Daubert* concerns until the close of an opponent's case, thereby placing opposing counsel and the trial court at a disadvantage."); *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 437 (4th Cir. 1997) (rejecting post-trial *Daubert* objection "under the guise of a challenge to the substantive sufficiency of this evidence," and emphasizing the need for timely objections so that "the proponent can attempt upon objection to lay the proper foundation" and "the question of admissibility can be fairly resolved as a threshold matter").

Plaintiffs' belated *Daubert* motion also fails on the merits. Dr. Wermers testified that, given the Plan's strategy and Dr. Wermers' extensive analysis of the market during the transfer period, "there's no realistic scenario in which the plan would retain a profit." (Tr. 216.) That testimony is relevant, supported by the evidence, and useful to the trier of fact. Moreover, as this Court has recognized, "this is a bench trial," and thus "the Court can freely accept or reject an expert's

testimony at trial as the trier of fact" without excluding evidence under Fed. R. Evid. 702. (Doc. 366 at 6.)

Plaintiffs' second challenge is directed at Dr. Wermers' testimony based on option pricing theory that "it would have cost $252 million at least, and probably significantly more than $252 million," to find a third party willing to take on the transfer guarantee obligation in April 2009. (Tr. 245.) Plaintiffs object to the testimony because Dr. Wermers disclosed this opinion after August 15, 2016, *i.e.*, after the close of expert discovery. Crucially, however, Plaintiffs fail to mention that Dr. Maxam did not provide an actual calculation of claimed "use value" profit until the filing of supplemental report served *at the stroke of midnight* on August 15. (*See* Tr. at 559–60 (Dr. Maxam's testimony admitting that he did not provide an actual calculation of use value until his supplemental report).). It was that calculation to which Dr. Wermers responded on October 7. And, of course, Defendants could not possibly have served a responsive report to Dr. Maxam's newly disclosed opinions by August 15, because they did not receive Dr. Maxam's supplemental report until midnight of that day. Any asserted "delay" was more than substantially justified under Fed. R. Civ. P. 37(c)(1).

Accordingly, confronted with a new set of opinions and calculations, Dr. Wermers had every right to respond with supplemental opinions of his own. And the Federal Rules not only expressly contemplate supplementation when new matter arises, they *mandate* such supplementary disclosures and provide a time frame for the required supplementation—the date "the party's pretrial disclosures under Rule 26(a)(3) are due," *i.e.*, thirty days before trial. Fed. R. Civ. P. 26(e)(2). That was October 7, 2016 here, which is precisely when Dr. Wermers provided his opinion about offsetting factors ignored by Dr. Maxam in his calculation.

Moreover, not only was supplementation proper under Rule 26, but Plaintiffs responded to Dr. Wermers' October 7 supplemental report by serving *two more expert reports on October 20*, both focused on the $252 million calculation they now contend was disclosed too late. (*See* Plaintiffs' Exhibits 112 and 113.) Accordingly, even if, *arguendo,* Defendants' asserted delay were *not* justified, it would nonetheless be harmless. Plaintiffs do not identify any concrete harm from the asserted delay, nor do they identify anything they would have done differently had Defendants somehow responded to Dr. Maxam's supplemental report within the discovery period—which, again, would have be impossible given the timing of when Plaintiffs served Dr. Maxam's supplemental report.

**IT IS THEREFORE ORDERED …**

1. Defendants' objections to the Expert Reports (PX 69–73, 76, 77, 112, and 113) are **GRANTED**;

2. Defendants' objections to the Towers Perrin Documents (PX 3 & 20) are **GRANTED**;

3. Defendants' objections to the June 19, 2000 News Article (PX 16) are **GRANTED**;

4. Defendants' objections to the IRS Settlement Communications (PX 34–39, 42, 45, and 117) are **GRANTED**;

5. Defendants' objections to the Mediation Settlement Communications (PX 97) are **GRANTED**;

6. Defendants' objections to the Discovery E-Mails between Counsel and Discovery Requests (PX 67, 103, and 107) are **GRANTED**;

7. Defendants' objections to the Evidence Exhibits that Plaintiffs Failed to Show any Witness, or Otherwise use During the Trial, or Mention in their Pre-Trial Memorandum, or Mention in their Proposed Findings of Fact and Proposed Conclusions of Law (PX 2-

15, 17-23, 25-33, 35-43, 45-47, 49-52, 54-66, 82, 83, 86, 87, 98-101, 103-106, 108-111, 114-117) are **GRANTED**;

8. Plaintiffs' objections to the Andreasen Calculation (Defs. Ex. 100-01) are **DENIED**;

9. Plaintiffs' objections to Mr. Andreasen's testimony are **DENIED**;

10. Plaintiffs' objections to Defs. Ex. 104 are **DENIED**; and

11. Plaintiffs' objections to Dr. Wermer's testimony are **DENIED**.

Signed: December 15, 2016

Graham C. Mullen
United States District Judge